THE STATE, EX REL. HOSTETTER, A TAXPAYER, APPELLEE, *v.* HUNT ET AL., EXRS., APPELLANTS.

(Decided March 17, 1936.)

*Mr. Ian B. Hart,* for appellee.

*Messrs. Lynch, Day, Pontius & Lynch,* for appellants.

LEMERT, J. This case comes into this court on appeal from the Common Pleas Court of Stark county, Ohio, in which court final judgment was entered in favor of the appellee, Clarence J. Hostetter. For the sake of clarity, the parties herein will be referred to as "appellants" or "defendant executors," and as "appellee" or "plaintiff."

Plaintiff at all times mentioned in his petition was a taxpayer in Stark county, Ohio. As such taxpayer, and prior to commencing his action herein, he made written request upon George N. Graham, the then duly elected, qualified and acting prosecuting attorney of Stark county, Ohio, to institute the civil action contemplated in the trial court in this case, and George N. Graham, as prosecuting attorney of the county, failed and refused, upon such request, to commence this action.

On or about the 7th day of April, 1931, Carrie Jacobs Brown, at the time being a resident of Massillon, Stark county, Ohio, died testate. On the 11th day of April, 1931, Per Lee Hunt and John Jacobs were duly appointed and qualified by the Probate Court of Stark county, Ohio, as the executors of the will of Carrie Jacobs Brown, deceased, and since that date they have been the duly appointed, qualified and acting executors of the last will and testament of Carrie Jacobs Brown and of her estate.

The record in this case discloses that during the years 1926, 1927, 1928, 1929 and 1930, Carrie Jacobs Brown resided in Massillon, Stark county, Ohio, and was the owner, during those years, of tangible and in-

tangible personal property of great value, all of which was subject to taxation and should have been returned for purposes of taxation under the laws of the state of Ohio as the same were then in force and effect; and that, as owner of such property, Carrie Jacobs Brown was, in the years 1926 to 1930, inclusive, a person required to list property or make a return thereof for the purposes of taxation.

The record further shows that, regardless of the foregoing facts, Carrie Jacobs Brown failed, during those years, to return her taxable property according to the true value thereof in money, for purposes of taxation as provided by law.

On June 20, 1931, Lester S. Lash, who was then the duly elected, qualified and acting auditor of Stark county, Ohio, made an assessment of taxes against the estate of Carrie Jacobs Brown of sums alleged to have been omitted by her on taxable property for the years 1921 to 1930, inclusive, at the rate of taxation belonging to each of the years, and entered the same on the tax list in his office. Thereupon the auditor of Stark county, Ohio, on June 21, 1931, gave a certificate for the taxes so assessed by him as aforesaid to the treasurer of Stark county, Ohio, for collection.

Thereafter, on the 28th day of March, 1932, the executors' applied to the Tax Commission of Ohio for a certificate of immunity from the collection of any omitted taxes of Carrie Jacobs Brown between the years 1926 to 1930, inclusive; and on or about the 30th day of August, 1932, the Tax Commission of Ohio issued its certificate, being a certificate of immunity from the collection of taxes, and being offered in evidence in this case by the defendant executors.

Plaintiff at the trial of this case in the court below objected to the competency, relevancy and materiality of the tax return filed by the auditor of Stark county, Ohio, as well as the proceedings had before the Tax

Commission of Ohio under which the certificate of immunity was issued by the commission.

After the taking of testimony, submission of written briefs and oral argument, the Court of Common Pleas of Stark county, Ohio, found in favor of the plaintiff and against the defendant executors in the sum of $385,518.21, that sum being the amount of delinquent taxes so found due from the estate of Carrie Jacobs Brown. The trial court reserved for future determination the matters of compensation to plaintiff's attorneys. It is from these several rulings that this appeal is before this court.

The first question presented herein is: Has the plaintiff taxpayer any statutory authority in the state of Ohio to maintain an action of this character?

Section 2921, General Code, among other provisions, authorizes the prosecuting attorney of a county, when satisfied that "money is due the county," to bring suit to. "recover such money."

Section 2922, General Code, provides:

"If the prosecuting attorney fails, upon the written request of a taxpayer of the county, to make the application or institute the civil action contemplated in the preceding section, such taxpayer may make such application or institute such civil action in the name of the. state."

Is "money due" from a decedent's estate upon a delinquent intangible tax, "money due the county" within the meaning of Section 2921, General Code?

We are of the opinion that the plaintiff's capacity to maintain this action should be based solely upon the basis of whether such statutory authority exists in this state for the bringing of the instant action..

Usually it is true, as contended by appellants, that a tax is not a debt, as that term is usually used, but however the rule may ordinarily be, at least insofar as an intangible tax levied against a decedent's estate in the

state of Ohio is concerned, such tax is definitely made a debt under our statutes.

Section 10509-81, General Code, reads as follows:

"Taxes or penalty lawfully placed on a duplicate or added by the county auditor or the tax commission of Ohio because of a failure to make a return, or of making a false or incomplete return for taxation, *shall be a debt of the decedent,* to have the same priority and be paid as other taxes, and collectible out of the property of the estate either before or after distribution, by any means provided by law for collecting other taxes. No distribution, or payment of inferior debts or claims shall defeat such collection; but no such tax or penalty can be added before notice to the executor or administrator, and an opportunity is given him to be heard. All taxes omitted by the deceased must be charged on the tax lists and duplicate in his name." (Italics ours.)

It will be noted that for the purposes of the administration of a decedent's estate a certain schedule for the payment of debts and the order in which they are to be paid in such cases is established by Section 10509-121, General Code, and without repeating it in full, suffice it to say that this section makes it plain and clear that taxes so assessed are a debt against the estate.

Further light upon the construction which the Legislature in this state has placed upon the question of an intangible tax being an indebtedness is to be found by reference to Section 5698, General Code, which reads as follows:

"On the trial of the action provided in the next preceding section, if it is found, *that such person is indebted,* judgment shall be rendered in favor of the treasurer prosecuting the action as in other cases. The judgment debtor shall not be entitled to the benefit of the laws for stay of execution or exemption of homestead, or other property, from levy or sale on execution

in the enforcement of such judgment.'' (Italics ours.)

A debt has been judicially defined as something owed from one to another, such as money, goods or services. See 18 Corpus Juris, 23.

A similar definition is to be found in Webster's Dictionary, wherein a debt is said be, ''That which is due from one person to another, whether money, goods or services.''

It is further contended by appellants in this action that the county treasurer of a particular county is the only person in whom authority is vested to collect taxes. With that proposition we do not agree. There is such authority in our Ohio statutes empowering one in the position of the plaintiff herein to bring the instant action.

We have given due consideration to Section 5697, General Code, which provides, among other things, the authority of a county treasurer to enforce collection of unpaid taxes by a civil action. However, we note, also, that one of the other remedies provided for the collection of taxes described in Section 5697, General Code, is found in the taxpayer's right of action, set forth in Section 2921.

The idea of individuals assisting the public treasurer in the collection of taxes is not one which is new or foreign to the judicial or legislative history of this state. As early as April, 1888, and for some years thereafter (see 85 Ohio Laws, 170), there existed in Ohio statutory authority for the county treasurer to employ tax inquisitors to secure fuller and better returns of property for taxation and to prevent omission of property from the tax duplicates.

This practice is recognized in many cases in this state, including *State, ex rel. Morgenthaler,* v. *Crites, Aud.,* 48 Ohio St., 142, 26 N. E., 1052. Instead of it being considered officious intermeddling, this type of

practice has been approved by legislative pronouncement for many years in the state.

We being of the opinion that there is ample statutory authority for a taxpayer to assist and supplement the work of the county treasurer, at least in so far as assistance may be given in the collection of intangible taxes from decedent's estates, we believe that valuable aid can be given to such public officials who, for one reason or another, are slow to bring in the public revenues justly due and owing to the public treasury.

The plaintiff's petition in the instant case alleges that he is now and has at all times hereinafter mentioned been a taxpayer in Stark county, Ohio.

The question is made in this case as to whether the plaintiff has the statutory right in Ohio to question the discriminatory character of the Intangible Tax Law, whether his position be considered that of an individual taxpayer, a prosecuting attorney, or a quasi-public official.

We note that on the stand in the court below the plaintiff testified that he was a taxpayer in Stark county when he filed the instant case and had been for many years, including the period from 1926 to 1931. So that, as a resident and taxpayer of Stark county, his personal and property rights have been directly affected by the evasion of tax payments on the part of Carrie Jacobs Brown and her estate. The taxes of this plaintiff and of every other taxpayer of Stark county have reflected the depletion in funds caused in the county treasury solely through the wilful withholding of money justly and rightfully due.

We note in 12 Corpus Juris, 764, that it is held:

"A taxpayer * * * may attack the validity of a statute exempting persons or property from taxation, or of a statute the enforcement of which would impose on him an additional financial burden, however slight."

It should constantly be kept in mind in this action

that Section 2922, General Code, gives plaintiff a definite right to bring an action in this type of case. We have already quoted the language of this statute and shall not repeat it here. However, we desire to say that if money is withheld from the county treasury by virtue of a claimed right under an unconstitutional statute, it is clearly illegally withheld within the meaning and purview of Sections 2921 and 2922, General Code, and a proper case is made for a taxpayer's action where the prosecutor, on demand, fails or refuses to bring such action.

It is further contended by appellants that plaintiff in this case has assumed the cloak of a quasi-public official and cannot, for that reason, attack the constitutionality of the law in question; but with that position we do not agree.

In the first place, by virtue of the code provisions already cited, plaintiff comes into this court strictly as a taxpayer, wearing the garment of no public official. As such taxpayer his individual property rights have been directly affected, as well as those of all other taxpayers in the same position as plaintiff. The mere fact that the action contemplated by Section 2922, General Code, is required to be instituted in the name of the state does not change the private character of the plaintiff to that of a public officer. The same situation arises wherever an action in mandamus or habeas corpus is instituted. Both are *ex rel.* proceedings, but plaintiff is nevertheless acting in the capacity of a private citizen in filing suit.

However, we do not concede that even though plaintiff were actually acting as a public official in the bringing of this action, that he would be barred from asserting the unconstitutionality of the immunity provisions of the new Intangible Tax Act. Numerous authorities hold that even public officers, occupying only ministerial positions, are permitted to question the consti-

tutionality of the statute, the rule being granted to both on public convenience and also because the officer may incur liability by executing a void statute.

In the case of *State, ex rel. Miller, Atty. Genl.,* v. *Leech, County Aud.,* 33 N. D., 513, 157 N. W., 492, the Supreme Court of North Dakota held that a county auditor could raise the question of the constitutionality of a statute giving the State Tax Commission the power to assess a certain class of public utilities, the public being interested in having a decision as to the officials who have power to assess this class of public utilities, and every county auditor and many other local taxing officials being confronted yearly with this question, as well as every other owner of this class of property throughout the state.

We note in the case of *Gorman, Pros. Atty.,* v. *Friedlander, County Treas.,* 44 Ohio App., 14, 184 N. E., 248, in which case Robert N. Gorman as prosecuting attorney of Hamilton county, Ohio, brought action against the auditor and treasurer of Hamilton county and the auditor of the state of Ohio, that the prosecutor sought an injunction against the distribution of certain funds collected under the new Intangible Tax Act, basing his case upon the proposition that certain distribution features of the act were unconstitutional and void. The Common Pleas Court and the Court of Appeals sustained the prosecutor's contention, and such holding was affirmed by the Supreme Court of Ohio, *Friedlander, County Treas.,* v. *Gorman, Pros. Atty.,* 126 Ohio St., 163, 184 N. E., 530.

The next proposition to be considered is: Does the law favor exemption of property from taxation and how should the laws relating to exemptions be construed?

We are of the opinion that the law does not favor exemption of property from taxation, and hence, laws relating to exemptions are strictly construed, as against

such exemptions and in favor of the taxing authority.

It is and always has been the theory of government that all property should bear its equal share of the cost and expense of government, and since the law does not favor exemption of property from taxation, before a particular property can be exempt therefrom it must clearly fall within the classes of property authorized to be exempt by the Constitution. See *Taylor* v. *Anderson, County Treas.*, 31 O. L. R., 567.

To have an effective exemption, it must be expressed in clear and unmistakable terms or at least with reasonable certainty, as the law relating to exemptions from taxation, being in derogation of equal rights, is strictly construed as against such exemptions and in favor of the taxing authorities.

The Supreme Court of the state of Ohio, in the case of *Little, Treas.*, v. *United Presbyterian Theological Seminary*, 72 Ohio St., 417, 74 N. E., 193, held that in construing taxing exemption statutes the court cannot go beyond the plain meaning of the words which the Legislature used to express its intention.

The same theory and rule was laid down in *Lander* v. *Burke*, 65 Ohio St., 532, 63 N. E., 69.

A study of the Constitution and statutes of this state shows that a continued definite purpose has long prevailed to limit property exempt from taxation to those classes in which the property is put either to a public or religious use. We refer to Section 2, Article XII, of the Constitution, which authorizes the General Assembly to exempt from taxation, burying grounds, public school houses, houses used exclusively for charitable purposes and public property used exclusively for any public purposes. The General Assembly, acting under the authority thus granted, has from time to time passed laws exempting the permitted classes of property from taxation.

So far as we have been informed or are able to dis-

cover, the so-called "New Intangible Tax Act" contains the first and only attempt on the part of the Ohio Legislature to extend the principles of complete immunity and exemption from the collection of taxes to private individuals holding property for purely private purposes.

We are therefore of the opinion that the salutary rule as to strict statutory construction, therefore, becomes doubly important in the case at bar.

The "New Intangible Tax Act," as passed in 1931, provided for the issuance of a "certificate of immunity," upon an evading or dishonest taxpayer against examination by the county auditor and criminal prosecution for his defaults, not an immunity from the collection of a valid tax.

Section 5398, General Code, as amended June 11, 1931, covered the matter of the county auditor's examination of a person believed to have made a false return or a person who had failed to file a return between the years 1926 and 1931. After covering certain provisions as to the notice, the section then goes on to say:

"Unless the person so notified produces a certificate of the tax commission of Ohio to the effect that the person whose returns are proposed to be examined, made a return in the year 1932 and fully and in good faith listed therein all the taxable property required by the law in force in the year 1932 to be so listed, the auditor shall proceed with the examination."

And then, too, in Section 5398-1, General Code, as amended June 11, 1931, the law provides:

"A person, or his legal representatives, called before the county auditor under the preceding section, or any person claiming to have made a return in the year 1932, may apply to the tax commission of Ohio for a certificate of immunity from examination under such section and from criminal prosecution.

"Upon such application the commission shall pro-

ceed to determine whether or not the person whose returns are proposed to be investigated by the county auditor made a return in the year 1932 and fully and in good faith listed therein the taxable property required by the law in force in said year to be so listed; and if it finds such to be the fact shall issue its certificate to that effect. The commission may order the county auditor to stay proceedings on the examination commenced by him pending the investigation which the commission is required thereby to make, but in the event of such stay the commission shall, if it refuses the application for such certificate, forthwith notify the county auditor of its action in the premises.

"Such certificate shall constitute a defense in any criminal prosecution for failure to list any personal property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise for taxation in any year prior to the year 1932, or for making false returns of any such property in any such year, or for perjury in making returns of any such property in any such year."

The foregoing two sections are a part of the permanent legislation embodied in the "New Intangible Tax Act."

With the passage of the two sections herein quoted we find that the Legislature passed another law, 114 Ohio Laws, 778, which provides that a person may at any time prior to the 1st day of April, 1932, apply to the Tax Commission of Ohio in the manner provided by Section 5398-1, General Code, for a certificate of immunity from the collection of omitted taxes so found.

This temporary section then went on to provide that the hands of the treasurer should be stayed until June 1, 1932, from collecting omitted taxes assessed in 1931,

or until ten days after the Tax Commission had acted upon an application for a certificate of immunity.

Applying common sense rules of statutory construction to the foregoing anomalous situation, it becomes evident that the legislative intent was not to prevent collection of a valid tax once properly assessed and placed on the duplicate, but merely to stay the auditor in his examination, if he had not made one, and to prevent criminal prosecution for evasion and dishonesty, provided a place of repentance was sought by the defaulting taxpayer in 1932. Where, as in the case at bar, a valid assessment and tax had been levied in 1931, we are of the opinion that the Tax Commission of Ohio was acting outside its express legislative authority in granting a certificate of immunity from the collection of back taxes justly due and owing. The most it could do was to award immunity from further examination by the auditor or from criminal prosecution.

We are of the opinion that the provisions of the so-called "New Intangible Tax Act," in so far as they attempt to grant a certificate of immunity to certain taxpayers in certain cases, are in violation of the provisions of the Ohio Constitution, and hence, not valid. Article I, Section 2, of the Constitution of Ohio, provides:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit."

Article II, Section 1e, provides:

"The powers defined herein as the 'initiative' and 'referendum' shall not be used to pass a law authorizing any classification of property for the purpose of levying different rates of taxation thereon or of authorizing the levy of any single tax on land or land values or land sites at a higher rate or by a different

rule than is or may be applied to improvements thereon or to personal property.''

Article II, Section 26, provides:

''All laws, of a general nature, shall have a uniform operation throughout the state.''

Article XII, Section 2 (as adopted November 5, 1918), provided:

''Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property, according to its true value in money * * * and personal property to an amount not exceeding in value five hundred dollars, for each individual, may, by general laws, be. exempted from taxation.''

Article II, Section 28, provides:

''The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts.''

In keeping with the fundamental principle of taxation that the property of all citizens should be made to contribute as equally as possible to the public burdens and expenses, the constitutional requirement was placed in the 1912 Constitution of the state of Ohio to the effect that all property should be taxed by uniform rule according to value. The constitutional powers known as the ''initiative'' and ''referendum'' retained by the people are expressly restricted from being used to pass a law authorizing any classification of property for the purpose of levying different rates of taxation thereon, or establishing a single rate on lands different from that on improvements, or personal property.

There can be no doubt that the phrase ''taxation by uniform rule'' imposes upon the Legislature the duty of passing laws which will secure equality in the bur-

den of taxation. *Probasco, Exr.,* v. *Raine, Aud.,* 50 Ohio St., 378, 34 N. E., 536.

In the early Ohio case of *Bank of Toledo* v. *City of Toledo,* 1 Ohio St., 622, the Supreme Court at page 700 said:

"It is clearly an essential quality in the taxing power, that its burdens be apportioned as near as may be, to the value of each man's property; and that no *immunities or exceptions* be granted, favoring certain persons and thereby defrauding or oppressing the rest. A contract on the part of the government to exempt one class of the community, either in whole, or in part, from its just proportion of the burdens of taxation, would be repugnant to the true nature and essential character of this important civil power, an abuse of legislative authority, a violation of the fundamental principle, in regard to the public burdens, upon which alone, persons become members of the community; and therefore, of no binding obligation."

It has further been held that taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation; and uniformity in taxing implies equality in the burden of taxation; and this uniformity cannot exist without uniformity in the mode of assessment, as well as in the rate of taxation.

We have given this case a great deal of time and attention. Extensive and voluminous briefs have been prepared and the case was ably presented in oral argument, and inasmuch as the final result of this case may affect the right and destiny of every citizen in the state of Ohio, in which problems of taxation will affect our people in the future, as a matter of broad public policy, therefore, it behooves any court, when given an opportunity so to do, to assist in stopping these ever mounting tax defaults. Every act passed by our Legislature tending to excuse, postpone and delay

the collection of back taxes has caused further tax delinquencies.

By the passage of the so-called "New Intangible Tax Act" it has resulted that the intangible property owners have felt that there is no particular point in paying today, because some later Legislature will probably provide a convenient immunity bath at some future date for them.

Defendants enter this case admitting their decedent evaded paying her just and lawful taxes for the five years ending in 1931. They, with others, came boldly forth in the short forty-five day period granted in 1932, and did what every honest man and woman in this state was also required to do at that time. They no doubt felt safe at that time because the treasurer's hands were stayed from making collections for a full six-months period, which included the aforesaid forty-five days. Out of this case came the certificate of immunity—something that no one could obtain before February 15, 1932, and no one has been able to obtain since March 31 of that same year. As to those respectable persons who had paid all they owed from 1926 to 1931; what of them? No money was ever returned to bring them to a position of equality. Such immunity as was granted Carrie Jacobs Brown was surely, in truth and in fact, an injustice.

The record discloses that the Carrie Jacobs Brown estate, as the inventory showed, was valued at over five million dollars. Should the people of Stark county be deprived of their just share of this vast estate, especially when their right thereto becomes only a matter of the application of natural justice to sound legal principles?

We are therefore of the opinion that the Court of Common Pleas reached the right conclusion and that no prejudicial error is found in this record, and that substantial justice was done all parties.

It therefore follows that the finding and judgment of the court below will be and the same is hereby affirmed.

*Judgment affirmed.*

MONTGOMERY and SHERICK, JJ., concur.