Stephenson, J.
 

 This action was instituted by Robert N. Gorman, prosecuting attorney of Hamilton county, Ohio, on behalf of the state of Ohio and for the use and benefit of Hamilton.county and its taxpayers, to test the constitutionality of Sections 6, 7 and 8 of the Intangible Tax Act, found in 114 Ohio Laws, pages 779, 780, 781, 782 and 783. The sections will not be set out in this opinion, as they are quite lengthy.
 

 After the action was filed, Joseph T. Tracy, as auditor of state of the state of Ohio, and the board of trustees of the public library of the city of Cincinnati were made parties defendant. Subsequently the board of trustees of the public library of Cincinnati withdrew from the action.
 

 Demurrers to the original petition were interposed by Joseph T. Tracy, auditor of state, Edgar Fried-lander, treasurer of Hamilton county, Ohio, and Robert Heuek, auditor of Hamilton county, Ohio.
 

 A slight amendment was made to the original peti
 
 *165
 
 tion, by way of change of figures. ■ This amendment could in no wise affect the question presented.
 

 A stipulation was made wherein it was agreed that the trial court could consider the tax rate for 1930 in the various subdivisions entitled to the proceeds from the Intangible Tax Act under Sections' 6, 7 and 8 and the state auditor’s report of distribution in the same manner as if statements to such effect were contained in the amended petition.
 

 The matter was submitted and the trial court found Sections 6, 7 and 8 of the Intangible Tax Law unconstitutional, and granted to plaintiff below the injunctive relief prayed for in his petition. To be more specific, Robert Heuck as county auditor of Hamilton county, Ohio, and Edgar Friedlander as county treasurer of Hamilton county, Ohio, were permanently enjoined and restrained from honoring any warrant drawn upon them by the auditor of state under the provisions of Sections 6, 7 and 8 of the Intangible Tax Law.
 

 Thereupon this case was taken by appeal to the Court of Appeals of Hamilton county, which court overruled the demurrers, thereby affirming the judgment of the court of common pleas.
 
 Gorman, Pros. Atty.,
 
 v.
 
 Friedlander, Treas.,
 
 44 Ohio App., 14, 184 N. E., 248. Error is prosecuted to this court to reverse these judgments.
 

 It will be noted that only the distributive features of Sections 6, 7 and 8 of the Intangible Tax Law are attacked. Plaintiff made the claim in the trial court that they were void and unconstitutional, and this claim was upheld in both of the lower courts.
 

 The Intangible Tax Act, passed June 11,1931, practically revolutionized our personal property tax laws. The old Personal Property Tax Law was abolished and repealed. In order to provide revenue as a substitute, in addition to taxes on bank deposits and interests, productive investments were to be taxed at five
 
 *166
 
 per cent, on the income yield, and unproductive investments at the rate of two mills on the valuation of the investment. Section 5638, General Code (114 ■ Ohio Laws, 722).
 

 To make up for the deficit caused by the repeal of the Personal Property Tax Law, the county was given a liberal portion of the increased automobile license tax, but no part of the proceeds from the intangible tax. Intangible taxes were to be divided among the municipalities, school districts, park districts, sanitary districts and library boards. The law provided that on or before February 1, 1932, each county auditor should determine what each of the taxing districtslost, and this determination would constitute the maximum that any taxing district could receive. If the entire amount collected throughout the state equalled the estimate, each subdivision would be entitled to its full estimate, regardless of the amount collected in that subdivision.
 

 The law further provided that after each county had reported its collection, the auditor of state would draw his warrant on the county treasurer where there was an excess collected over the state-wide average, and pay deficiencies to those under the state-wide average.
 

 A table showing the complete adjustment of the undivided classified tax collected in the eighty-eight counties of the state as advance payments in 1932 and reported to Joseph T. Tracy, auditor of state, at the May settlement of 1932, is not questioned, as this court takes it. This table establishes the facts as claimed by plaintiff below. In Hamilton county at the May settlement in 1932 more than fifty per cent, of the total quota was collected. As a matter of simple calculation, Hamilton county would collect more than one hundred per cent, of its quota for the year.
 

 The state-wide average was only thirty per cent., based on the full year, or sixty per cent, of the estimate
 
 *167
 
 that it was thought might be raised for the first half year.
 

 An examination of the table formulated by the auditor of state, hereinbefore referred to, reveals the further fact that only fifteen counties collected more than the sixty per cent, of the state-wide average. Hamilton county had a net collection in May of $1,776,847.83, and, because of the poor collection in other counties, the auditor of state under the law was authorized to take from these taxes collected in Hamilton county approximately $763,000, an amount equal to about forty per cent, of the funds collected in that county, which amount, under' the law, would be placed in the state treasury and be disbursed, taking the auditor of state’s table as the rule, in a large percentage to other urban counties.
 

 The last clause of Section 6 of the Intangible Tax Law (114 Ohio Laws, 780) reads as follows: “In preparing the tax budget for the years 1932 and 1933, under section 5625-20 of the General Code, the taxing authorities of each subdivision shall estimate that said subdivision will receive from the intangible tax fund the full amount to which such subdivision is entitled under the provisions of this section,
 
 to be apportioned among the several funds, including funds for the payment of interest, sinking fund and retirement charges on bonds,
 
 in accordance with the provisions of this act.”
 

 It will be noted that the distributable share is based upon the 1930 rate in the various municipalities, school districts, park districts, sanitary districts and library districts, and that the money realized from the intangible tax was to be distributed in accordance with the losses, based on the 1930 personal tax duplicate.
 

 It was insisted by the plaintiff below: First, that these statutory provisions are arbitrary and the manner of their enforcement violates the due process clause and the uniformity clause of the Constitution
 
 *168
 
 of OMo; second, that tMs tax is a local tax and must be applied to the locality from which it arises; third, that it is not a tax for a public state purpose so far as the people of Hamilton county are concerned; and, fourth, that it violates the sinking fund requirements of the Constitution of Ohio.
 

 It will be remembered that the right of the legislature to levy and collect the intangible tax is not challenged. If the statutes providing for the distribution of the intangible tax are declared unconstitutional, then the legislature must provide constitutional ways and means by wMch the fund may be applied to the object named in the statutes.
 
 State, ex rel. Donahey, Auditor of State,
 
 v.
 
 Edmondson, County Auditor,
 
 89 Ohio St., 93, 105 N. E., 269, 52 L. R. A. (N. S.), 305, Ann. Cas., 1915D, 934.
 

 It is insisted that taking the 1930 rate in the various taxing districts as a basis was arbitrary, unreasonable and worked a hardship on many taxing districts.
 

 The legislature was probably at its wit’s end to find a basis for this distribution, and we can readily see how some taxing districts would be benefited and others hurt by the adoption of this basis. It is theoretical rather than practical that the burdens of taxation fall equally upon the shoulders of all. It is rather farfetched to insist that if the legislature could go back to 1930 for a basis, they could likewise go back to 1802. We do not deem it necessary to pass on this phase of the case, and we pass it with tMs- comment.
 

 This is a law of general nature and should have uniform operation throughout the state. It is probably as uMform as it can be made, taMng into consideration its objects and purposes. Courts are liberal when the law sought to be questioned effects a transition made necessary by public exigency; but to accomplish such purpose courts will not fly in the face of the constitution.
 

 The right of the state to levy taxes is a sovereign
 
 *169
 
 right, circumscribed only by our constitutions. The General Assembly has power to levy a tax for state purposes, but, as has been said by this court heretofore, the purposes must be state purposes as a matter of fact. The intangible tax is a personal property tax. To argue that such tax can be distributed in the same way as a gas tax, cigarette tax or the general school taxes in state aid cases, is futile. The cigarette tax and the gas tax are excise taxes, and the general levy for state aid for weak school districts is a state purpose, originally announced in the ordinance of 1787 and carried into our constitutions.
 

 The intangible tax is a local tax and it is levied for local purposes. The state at large receives no benefit from it, other than the one per cent, sought to be carried to the tax commission of the state of Ohio, for the purpose of making it workable. Under this system the tax collected in Lucas county may be expended in Jefferson county for a purely local Jefferson county purpose. Toledo citizens under this law may be made to pay the salaries of policemen in Steubenville. In short, the citizens of one city may be charged, under the provisions of this law, with part payment of purely local projects in another city, in which projects they are not in the slightest degree interested, but for which they have been taxed without any representation whatever.
 

 The constitutional limitation, as contained in Article XII, Section 2 of the Ohio Constitution, is not seriously involved in this case, and we are not passing upon that proposition.
 

 Article XII, Section 4, provides: “The general assembly shall provide for raising revenue, sufficient to defray the expenses of the state, for each year, and also a sufficient sum to pay the interest on the state debt.” This limitation is involved.
 

 We have read the case of
 
 Amos, Comptroller,
 
 v.
 
 Mathews,
 
 99 Fla., 1, 126 So., 308, and we are impressed
 
 *170
 
 with its sound reasoning. The proposition is baldly stated in that ease: “It is clear, therefore, that our Constitution contemplates that an exclusively State purpose must be accomplished by State taxation; an exclusively county purpose, in which the State has no sovereign interest, by county taxation.”
 

 This court agrees that payment of local salaries, and payments for local improvements, are for purely local purposes, and we are unable to conceive how they can be denominated state purposes.
 

 Holding as we do, that this is a local tax, it is not necessary to determine whether or not the sinking fund provisions of the Constitution as contained in Article VIII, Section 7, are violated.
 

 It is the opinion of this court that the judgments of the Court of Appeals and the court of common pleas were right, and they are hereby affirmed.
 

 Judgments affirmed.
 

 Weygandt, C. J., Kinkade and Jones, JJ., concur.