"Williams, J.
 

 The sole question presented is whether paragraph 3a of Section 6309-2, General Code, which provides for the creation of a county poor relief distributing fund is constitutional.
 

 The respondents in each case raise the question of unconstitutionality by a general demurrer to the petition, and each petition undisputedly alleges facts sufficient to state a cause of action, provided the provision attacked is constitutional.
 

 Paragraph 3a of Section 6309-2, General Code, provides :
 

 “The county commissioners of any county
 
 may,
 
 by a two-thirds vote, and if the taxing authority of any subdivision, wholly or partly within the county, administering poor relief, by resolution adopted by a "majority vote of such taxing authority and certified to the county commissioners, shall request it, they
 
 shall,
 
 create a poor relief distributing fund and direct the county auditor of such county to transfer and credit to
 
 *266
 
 such fund not to exceed twenty-five per centum of the moneys collected from and after the effective date of this act to and including April 15, 1941, and received by such county auditor under each and all of the three preceding paragraphs of this section, including moneys received for the use of municipal corporations. The resolution providing for such transfer shall specifically provide that each of the funds from which such transfer is made shall be reimbursed by the county auditor on or before May 31, 1941, by transfers thereto from the general fund of the county. From such poor relief distributing fund the .county commissioners may appropriate and pay or expend, according to need, to or for any subdivision of the county or to or for the county, if administering poor relief, money for the purpose of matching state funds for poor relief. No appropriation or payment shall be made to or for any subdivision unless the taxing authority thereof shall, by resolution, certified to the county commissioners, request participation in such poor relief distributing fund, and unless such subdivision shall be administering poor relief, and such resolution shall further provide for the creation of a poor relief fund in such subdivision. * * *” (Italics ours.)
 

 Counsel contend that this statutory provision violates Section 5 of Article XII of the Constitution of Ohio, which reads: “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly,, the object of the same, to which only, it shall be applied.”
 

 The original source of this fund is the revenue derived from license and registration taxes collected under the provisions of the chapter on motor vehicles.
 

 The contention is made that the ultimate effect of the establishment of a poor relief distributing fund is to pay the debts created by a municipality or other subdivision of the county out of the county general fund, which finds its source in taxes levied and collected
 
 *267
 
 for county purposes and that the result is the application of taxes to an object other than that for which they were imposed. Counsel have cited
 
 State, ex rel. Cooley,
 
 v.
 
 Thrasher, Aud.,
 
 130 Ohio St., 434, 200 N. E., 468;
 
 Friedlander, Treas.,
 
 v.
 
 Gorman, Pros. Atty.,
 
 126 Ohio St., 163, 184 N. E., 530;
 
 State, ex rel. Walton, Aud.,
 
 v.
 
 Edmondson,
 
 89 Ohio St., 351, 364, 106 N. E., 41.
 

 The first two of the above cases have little, if any, bearing upon the inquiry, and the
 
 Walton case
 
 can easily be distinguished. In the latter case the court had under consideration whether Section 8 of the Act of April 28, 1913 (103 Ohio Laws, 833), entitled: “An act to create an institution for the relief of the needy blind” violated the above constitutional provision.
 

 Section 8 of that act required the county treasurers to pay over to the state treasurer all moneys in their possession or that might thereafter come into their possession under existing levies for the relief of the blind.
 

 It appears that each county had raised a fund of its own under the Act of 1908 (99' Ohio Laws, 56), for the relief of its own blind. For the reason that the money each county had to pay under this levy differed from the amount that each county could have been compelled to contribute if the state had raised the money for the relief of the blind within the whole state, the court took the position that Section 8 of the Act of April 28, 1913, if carried out, “would produce the very inequality and injustice” which Section 5, Article XII of the state Constitution was intended to prevent.
 

 No such diversion of funds from the object intended will result from carrying out the provisions of paragraph
 
 3a
 
 of Section 6309-2. This constitutional provision, moreover, does not require that taxes collected by the state for a specified purpose shall be expended or distributed uniformly or ratably among the counties. Uniformity of tax distribution and expenditure has never been required.
 
 Miller
 
 v.
 
 Korns, Aud.,
 
 107 Ohio St., 287, 295, 140 N. E., 773. The fact that under a law
 
 *268
 
 some counties receive less than the amount collected from them as taxes does not render the law invalid. By parity of reasoning taxes levied and collected by a county for a county purpose are not required to be equally or proportionately distributed among the subdivisions of the county. The county commissioners, in the exercise of their discretion to spend funds for poor relief, may make the expenditures where needed within the county, without running counter to the constitutional requirement. Poor relief may be met out of the general fund of the county (Section 5625-5, General Code); furthermore paragraph
 
 3a
 
 of Section 6309-2 itself, in effect, authorizes distribution for poor relief from the general fund because in reality the poor relief distributing fund is merely a channel through which moneys from the general fund flow to the various subdivisions. In other words, the funds from which the transfer to the poor relief distributing fund is made are reimbursed “by transfers thereto from the general fund of the county.” The constitutional inhibition is not transgressed so long as moneys which are drawn ultimately from the general fund by the process of reimbursement are dispensed for poor relief wholly within the county; in -keeping with this principle, moneys employed for relief purposes within a subdivison Only partly within the county must be expended exclusively for the relief of poor within the county. The matching of poor relief funds by the state and the using of the subdivisions as agencies of the county in the distribution of such funds levied and collected within and by the county are not inhibited by the constitutional limitation. The state by the matching process and the county through the poor relief distributing fund merely enable the subdivision to do what the state and county could have done direct; for. whether done through the agency of a local subdivision or directly, the ultimate recipients of the funds are the needy, poor of the county. Paragraph 3a of Section
 
 *269
 
 6309-2, General Code, is not in contravention of Section 5, Article XII. of the state Constitution.
 

 There is another phase of the case that requires attention. Paragraph 3a provides that the. county commissioners shall act to establish a poor relief distributing fund and direct the county auditor to transfer funds thereto upon proper request by the taxing authority of a subdivision. The word ‘‘ shall” being used in contradistinction to “may” must be construed as mandatory after such request. In effect this provision makes the action of the taxing authority of a subdivision a contingency that brings the fund into existence regardless of the non-action of the county authorities, although subsequent steps are left to the discretion of the county commissioners and even though the taxing authority that requests the creation of the fund can receive no part thereof unless the county commissioners so determine. It is not apparent what provision of the state Constitution is contravened by this mandatory provision unless it be Section 26, Article II, which provides: “All laws, of a general nature, shall have a uniform operation throughout the state; nor, shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the General Assembly, except, as otherwise provided in this Constitution. ’ ’
 

 Paragraph 3a of Section 6309-2, General Code, became effective May 29, 1939, but the creation of the fund rests upon action by the county commissioners either upon their own volition or upon the request of a taxing authority of a subdivision. Such a fund may be brought into existence by either contingency. Under the above constitutional provision, laws, the execution of which is dependent upon the happening of a specified event, have been held valid.
 
 Cincinnati, Wilmington & Zanesville Bd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77, 87, 90;
 
 Peck
 
 v.
 
 Weddell,
 
 17 Ohio St., 271;
 
 Newton
 
 v.
 
 Board of Commrs. of Mahoning County,
 
 26
 
 *270
 
 Ohio St., 618; affirmed in 100 U. S., 548, 25 L. Ed., 710;
 
 Gordon
 
 v.
 
 State,
 
 46 Ohio St., 607, 627, 23 N. E., 63, 6 L. R. A., 749;
 
 Carpenter
 
 v.
 
 Cincinnati,
 
 92 Ohio St., 473, 111 N. E., 153;
 
 Thompson
 
 v.
 
 City of Marion,
 
 134 Ohio St., 122, 16 F. E. (2d), 208;
 
 State, ex rel. Standard Oil Co.,
 
 v.
 
 Combs, Dir.,
 
 129 Ohio St., 251, 259, 194 N. E., 875. There is a distinction between a legislative declaration that an enactment shall not become a law until approved by some authority other than the General Assembly itself, and a statutory provision which has become law but depends for its execution upon a contingency or an eventuality. The former is prohibited ; the latter is not.
 

 The state Legislature undoubtedly has power to,create by positive enactment such a poor relief distributing fund in each county and, if that power exists, there seems to be no reason why the Legislature would not also have the power to require the county commissioners to create the fund upon a contingency such as the request of a subdivision.
 

 This branch of the case has another approach. Under the doctrine of the distribution of powers, legislative power cannot be delegated. As may be perceived by an examination of the authorities heretofore cited, the constitutional inhibitions against the delegation of legislative power and against the passage of an act effective only upon the approval of some other authority, are so akin to each other that the currents of discussion naturally cross and intermingle. Manifestly paragraph 3a of Section 6309-2, General Code, does not confer upon the county commissioners or the controlling body of a subdivision any authority to legislate, but at best merely bestows the right to make a factual determination as to the necessity of creating a poor relief distributing fund.
 

 Since paragraph 3a of Section 6309-2, General Code, is not in contravention of the Constitution and is a valid enactment, the demurrer in each case will be over
 
 *271
 
 rilled and, the respondent not desiring to plead further, a writ of mandamus will he issued as prayed for therein.
 

 Writs allowed.
 

 Weygandt, C. J., Day, Zimmerman, Myers, Matthias and Hart, JJ., concur.