The sole question raised by this appeal is whether the petition states facts which show a cause of action.
As stated by the Court of Appeals:
"What was the legislative purpose and intent in enacting General Code Sections 3391 et seq., and providing therein that such contract as the one in question might be entered into by the city and county? Was it to change the statutory provisions that each subdivision must care for its own poor?"
As phrased by appellee:
"The only question here presented is whether or not the county commissioners of a county in which a city is located may, pursuant to Sections 3391 et seq. and 3476 of the General Code, administer poor relief in such city at the sole expense of the county."
While both parties have referred to Section 1 of Article X of the Constitution, they agree that there is no constitutional question involved. With the exception of the phrase, "The General Assembly shall provide by general law for the organization and government of counties," no part of Section 1 of Article X is applicable for the reasons:
1. Mahoning county has not adopted a charter or alternative form of government: and
2. The General Assembly has not indicated the. use of this section by securing to the people of a county the rights of initiative and referendum in respect of the measures adopted.
We agree with the court below that "To determine that question [the sufficiency of the petition] we must *Page 482 
look solely to the petition and the applicable statutes, and if either or both causes of action set out therein constitute a cause or causes of action the demurrer must be overruled."
Before proceeding to the statutes immediately involved, it will be helpful to make a brief reference to the background.
As stated in 31 Ohio Jurisprudence, 43, Section 2:
"At common law there was no obligation resting upon a community to aid poor or unfortunate people. The whole subject of relieving the poor is of statutory origin; and where it is done in pursuance of municipal law, it also depends upon statutory regulations."
In the case of State, ex rel. Walton, v. Edmondson, Aud.,89 Ohio St. 351, 360, 106 N.E. 44, Judge Johnson said:
"In fact, the entire system for the establishment and maintenance of benevolent institutions and benevolent works of the state has proceeded upon the idea that the Legislature in the exercise of its general legislative power was vested with authority to do whatever in its judgment the public welfare demanded, always provided that the thing done should be for a public purpose and should not take public money for the advancement of a purely private object."
That poor relief is a state function does not admit of argument. If there were any doubt, it ought to be dispelled quickly by an examination of the many statutes upon the subject and especially the appropriation of various excise tax proceeds to the subdivisions for poor relief.
As Mahoning county has not adopted a charter or alternative form of government, it still remains a mere agency of the state. A county is described in 11 Ohio Jurisprudence, 241, Section 4, as follows:
"It is rather a constituent part of the plan of permanent *Page 483 
organization of the state government — a wholly subordinate political division or instrumentality, created and existing almost exclusively with a view to the policy of the state at large, and serving as a mere agency of the state for certain specified purposes."
The functions of a county and its distinction from a municipality are set forth by Judge Brinkerhoff in Board ofCommrs. of Hamilton County v. Mighels, 7 Ohio St. 109,118-119, as follows:
"* * * muncipal corporations proper are called into existence, either at the direct solicitation or by the free consent of the people who compose them.
"Counties are local subdivisions of a state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former organization is asked for, or at least assented to by the people it embraces; the latter is superimposed by a sovereign and paramount authority.
"A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy."
To the same effect, see the language of Judge Spear inJones, Aud., v. Commissioners of Lucas County, *Page 484 57 Ohio St. 189, 212, 48 N.E. 882, 63 Am. St. Rep., 710.
From the foregoing, it will be seen that there is no inherent reason why the county, which embraces all municipalities and townships within its limits, may not be made the unit for poor relief at the sole expense of the county and either with or without state aid.
In the case of State, ex rel. DeWoody, Dir. of Law, v. Bixleret al., Bd. of County Commrs., 136 Ohio St. 263,25 N.E.2d 341, it was pointed out by Judge Williams, at page 266:
"The contention is made that the ultimate effect of the establishment of a poor relief distributing fund is to pay the debts created by a municipality or other subdivision of the county out of the county general fund, which finds its source in taxes levied and collected for county purposes and that the result is the application of taxes to an object other than that for which they were imposed. * * *
"[268] By parity of reasoning taxes levied and collected by a county for a county purpose are not required to be equally or proportionately distributed among the subdivisions of the county. The county commissioners, in the exercise of their discretion to spend funds for poor relief, may make the expenditures where needed within the county, without running counter to the constitutional requirement."
Judge Williams also said, at page 268: "Poor relief may be met out of the general fund of the county." This was no new doctrine, as it was provided in Section 4 of the Act of January 19, 1829 (27 Ohio Laws, 14):
"That the county commissioners be, and they are hereby authorized and empowered, in case the ordinary revenue of thecounty shall prove insufficient for the support of the poor, to levy and collect a poor tax, not exceeding one mill on the dollar of the valuation *Page 485 
of property, taxable for state and county purposes, to be entered on the grand list, and collected as other taxes." (Italics ours.)
Under Section 5625-5, General Code, counties may levy taxes for the relief and support of the poor
Prior to the enactment of Section 3391 et seq., General Code, poor relief in Ohio was carried on pursuant to Sections 2394-6 and 3476, General Code.
Section 2394-6, General Code, provides:
"In addition to other powers vested in it, the board of county commissioners of any county may provide, for needy persons therein whose condition requires it, such non-institutional support, care, assistance, or relief as such persons may be entitled by law to receive at public expense; and may establish a suitable office or agency for the administration thereof." This section became effective July 23, 1935.
Section 3476, General Code, which has been in effect for many years and was last amended in 108 Ohio Laws, part 1, 266, 272, provides:
"Subject to the conditions, provisions and limitations herein, the trustees of each township or the proper officers of each city therein, respectively, shall afford at the expense of such township or municipal corporation, public support or relief to all persons therein who are in condition requiring it. It is the intent of this act that townships and cities shall furnish relief in their homes to all persons needing temporary or partial relief who are residents of the state, county and township or city as described in Sections 3477 and 3479. Relief to be granted by the county shall be given to those persons who do not have the necessary residence requirements, and to those who are permanently disabled or have become paupers and to such other persons whose peculiar condition is such that they cannot be satisfactorily cared for except at *Page 486 
the county infirmary or under county control. When a city is located within one or more townships, such temporary relief shall be given only by the proper municipal officers, and in such cases the jurisdiction of the township trustees shall be limited to persons who reside outside of such a city."
We are of the opinion that Section 3476, General Code, has been modified by Sections 2394-6 and 3391 et seq., General Code, not only because these latter sections are of later origin, but because Section 3391-2 (8) specifically provides:
"Except as modified by the provisions of this act, Section 3476 and other sections of the General Code of like purportshall remain in full force and effect and nothing in this act shall be construed as altering, amending, or repealing the provisions of Section 3476 of the General Code, relative to theobligation of the county to provide or grant relief to those persons who do not have the necessary residence requirements and to those who are permanently disabled or have become paupers and to such other persons whose peculiar condition is such that they cannot be satisfactorily cared for except at the county infirmary or under county control." (Italics ours.)
The General Assembly was here making sure that the county would not be relieved of permanent relief cases. Section 2394-6, General Code, has been kept in force by the foregoing language of Section 3391-2 (8), subject, of course, to the provisions of Section 3391 et seq.
Section 3391-1, General Code, which became effective June 6, 1939, provides as follows:
"Commencing on the first day of July, 1939, the territory in each county outside the corporate limits of cities therein shall be a local relief area hereinafter referred to as the 'county local relief area,' the local *Page 487 
relief authority for which shall be the board of county commissioners of the county; and each city shall be a local relief area, the local relief authority for which shall be the proper board or officer of the city; provided, however, that any board of county commissioners, upon request of the township trustees of any township in the county, shall, by resolution adopted at any time after this act becomes effective,designate such township trustees to act as its agents in theadministration of poor relief within such township to theextent provided in such resolution; provided, further, that the legislative authority of a city, on the one part, and board of county commissioners of the county in which the city or any part thereof is located, on the other part, may, under the provision of Sections 2450-1 to 2450-6 of the General Code, and with the effect therein specified, enter into an agreement whereby such board of county commissioners is authorized to actas the local relief authority for and in behalf of the city; or the legislative authorities of two or more cities in a county may, under Section 3615-1 of the General Code, enter into an agreement for the joint administration of poor relief within such cities; provided further that the legislative authority of any city within the county may, by agreement with all other cities and the county act as the local relief authority for such cities and county upon such terms as may be agreed upon.
"Such an agreement whereby the board of county commissioners is authorized to act as the local relief authority for and in behalf of a city, if entered into prior to the first day of July in any year, may provide that, for the purpose of taxlevies for poor relief and the appropriation and expenditurethereof for one or more next ensuing fiscal years, the city shall be a part of the county local relief area, anything to the contrary in Section 2450-2 of the General Code notwithstanding; *Page 488 
in which event such city shall not, for the duration of such contract, have power to levy taxes for poor relief.
"If the county local relief area is not coextensive with the county, it shall constitute a special taxing unit on the taxable property within which the county commissioners of the county shall have authority to levy a tax for poor relief and to the electors within which the county commissioners shall have authority to submit the question of a special levy outside of the ten-mill limitation for such purpose in the manner provided by Sections 5625-15 to 5625-18, both inclusive, of the General Code. The county treasurer shall be the treasurer of such county local relief area and all expenditures from the treasury of such county local relief area shall be governed by the appropriate provisions of law relative to the expenditure of moneys in the county treasury and by the provisions of this act." (Italics ours.)
It will be noted that the county was authorized to designate township trustees as its agents in the administration of poor relief and that where an agreement was entered into by two or more cities it was for the joint administration of poor relief, while in the case of a contract between a city and the county commissioners, such board is authorized to act as local reliefauthority for and in behalf of the city.
Section 2450-2, General Code, authorizes agreements between the county commissioners and other legislative authorities, but provides that the county commissioners should not by virtue ofthat act (116 Ohio Laws, 102) be deemed to have acquired any power to levy taxes within and in behalf of a contracting party. This feature of Section 2450-2, forbidding the levying of taxes under the contract, was specifically amended in Section 3391-1, supra. *Page 489 
Section 2450-3, General Code, requires that agreementsmade pursuant to Section 2450-2 shall provide either in specific terms or prescribe a method for determining amounts for money payments to be made by the contracting subdivision into the county treasury in consideration of the performance of the agreement. However, there is no provision even here forrequiring any payment to be made.
It will be noted that the purpose of Section 3391-2 (8),supra, is to make sure that the county will not be relieved of the obligation to provide or grant relief to those persons who do not have the necessary residence requirements and to those who are permanently disabled or have become paupers and to such other persons whose peculiar condition is such that they cannot be satisfactorily cared for except at the county infirmary or under county control. It will be noted that here again the county is not limited to that territory outside of municipalities.
We cannot accept the interpretation of the court below, which is, in substance, that because of the provisions of Sections 3476 and 3391-1 and 3391-2 (8), General Code, the various cities were required to administer poor relief in their respective territories. Temporary or partial relief is all that was required of cities by the provisions of Section 3476. While Section 3391-2 (8) continued this requirement, under Section 2394-6, supra, the county commissioners might have relieved a city within the county from such obligation up to the effective date of Section 3391 et seq., without a contract or pursuant to a contract made under Section 2450-2, General Code.
Section 2450-2, General Code, contains the following provisions:
"Nothing in this act nor in any agreement by it authorized shall be construed to suspend the possession by a contracting subdivision of any power or *Page 490 
function exercised or performed by the board of county commissioners in pursuance of such agreement. Nor shall the county commissioners by virtue of any agreement entered into under the authority of this section be deemed to have acquired any power to levy taxes within and in behalf of a contracting subdivision."
Neither of the foregoing provisions is applicable to a contract made pursuant to Section 3391-1, General Code.
Under Section 5625-13h, General Code, effective July 11, 1938, the legislative authority of a municipality may transferpoor relief funds or any other funds not otherwise appropriated
to the county to be expended by the county for poor relief. Likewise, the county may make such transfers to a municipality located in the county. In either event, there is no provision for repayment.
The court below relied upon the case of Friedlander,. CountyTreas., v. Gorman, Pros. Atty., 126 Ohio St. 163,184 N.E. 530, which held invalid the distributive features of theintangible tax law (114 Ohio Laws, 779). We do not think that the Friedlander case is applicable here. In that case, the syllabus shows the law there in question to have been held invalid insofar as a tax on personal property levied and collected in one county might be appropriated to the payment of purely local obligations of local subdivisions in anothercounty. The syllabus in that case contains the following language:
"In counties where such tax is levied and collected, the taxing authorities have plenary power to distribute the county's share of such tax, as determined by such law to thesubdivisions of such county entitled thereto." (Italics ours.)
We are of the opinion that the reasoning in the case *Page 491 
of State, ex rel. DeWoody, Dir. of Law, v. Bixler, supra, is applicable here, though the facts in that case are not on all fours with the facts in the instant case.
In connection with the question of county expense, it should be emphasized that part of the funds for poor relief come from various excise taxes collected by the state and distributed to and through the counties. These excise tax proceeds include portions of public utility taxes, admission tax, malt and wort tax, bottled beverage tax, sales tax, etc. (See Sections 5491, 5544-2, 5545-2, 5546-18 and 6212-49b, General Code. This list is not meant to be exhaustive, but merely illustrative.)
Summarizing our conclusions: There is no common-law obligation to grant poor relief. Poor relief is a state function. A county which has not adopted a charter or alternative form of government is a wholly subordinate political division or instrumentality for serving the state. The authority for expenditure of poor relief rests in general laws enacted by the General Assembly. A county embraces the territory within the municipalities located within the county. A county may transfer to a city within the county, or a city may transfer to the county in which the city is located, funds for poor relief without obligation for repayment.
The General Assembly has placed the duty of caring for "temporary relief" cases within their borders upon municipalities, except where by contract made pursuant to the provisions of Section 3391-1, General Code, between the legislative authority of the city on the one part and the board of county commissioners of the county in which the city is located on the other part, the county commissioners become the local relief authority for and on behalf of the city and the entire county becomes, for the purpose of tax levies for *Page 492 
poor relief and the appropriation and expenditure thereof, the local relief area. There is no provision of law that a contract entered into between the legislative authority of a city and the county commissioners under Section 3391-1, General Code, shall require the county commissioners or the county to collect from the municipality any part of the cost of administering poor relief within the limits of the contracting city.
Therefore, the judgment of the Court of Appeals should be, and hereby is, reversed and the judgment of the Court of Common Pleas is hereby affirmed.
Judgment reversed.
WEYGANDT, C.J., WILLIAMS, MATTHIAS, HART and ZIMMERMAN, JJ., concur.
BELL, J., not participating.