Betty **TURNER**, etc., Plaintiff,

v.

**CITY OF TOLEDO, et al., Defendant.**

Case No. 3:07 CV 274.

United States District Court,
N.D. Ohio,
Western Division.

Dec. 2, 2009.

Geoffrey N. Fieger, William J. McHenry, Fieger, Fieger, Kenney, Johnson & Giroux, Southfield, MI, Robert M. Scott, Lafferty, Gallagher & Scott, Toledo, OH, for Plaintiff.

Adam W. Loukx, Jeffrey B. Charles, Mark S. Schmollinger, City of Toledo, Department of Law, Jay E. Feldstein, Kalniz, Iorio & Feldstein, Richard M. Kerger, Kerger & Hartman, John A. Borell, Sr., Andrew K. Ranazzi, Office of the Prosecuting Attorney, Dennis A. Lyle, Anspach Meeks Ellenberger, James R. Knepp, II, Thomas J. Antonini, Robison, Curphey & O'Connell, Joan C. Szuberla, Spengler Nathanson, Toledo, OH, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

In this action, Plaintiff Betty Turner seeks recovery under 42 U.S.C. § 1983 against Defendant Lucas County for deprivation of her decedent's civil rights. She also brings claims against defendants Jonathon Leach, William Ginn, and Joe Villanueva for depriving the decedent of his civil rights guaranteed under § 1983 by using excessive force against him during his stay at the Lucas County Jail, where Leach, Ginn, and Villanueva were on duty.

This matter is now before the Court on the motion of Lucas County (Doc. 94), pursuant to Fed. R. Civ. Pro. 59(e), for reconsideration of the portions of this Court's November 3, 2009, opinion (Doc. 92) denying Lucas County's motion to be dismissed from this action under Fed. R.Civ.P. 12(b)(6). Plaintiff has filed a motion for reconsideration (Doc. 94) of the portions of this Court's November 3, 2009, opinion granting the motions of Leach, Ginn, and Villanueva for dismissal of the § 1983 claims against them on qualified immunity grounds; Leach (Doc. 101), Ginn (Doc. 103), and Villanueva (Doc. 102) have filed briefs in opposition. Both motions will be denied.

## I. Rule 59(e) Standard

■ The purpose of a motion to alter or amend judgment under Fed.R.Civ.P. 59(e) is to allow the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). This rule gives the district court the "power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). Generally, three major situations justify a district court altering or amending its judgment: (1) to accommodate an intervening change in controlling law; (2) to consider newly discovered evidence; or (3) to prevent a clear error of law or a manifest injustice. *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor is it a substitute for appeal. *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir.2007) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998)). Rather, a motion to alter or amend is proper only if it calls to the Court's attention "an argument or controlling authority that was overlooked or disregarded in the original ruling, presents manifest evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Davie v. Mitchell*, 291 F.Supp.2d 573, 634 (N.D.Ohio 2003).

## II. Lucas County's Motion for Reconsideration

■ In its motion, Lucas County seeks reconsideration on the ground that "no reason was presented in the Court's November 3rd, 2009 order as to why it was dismissed." (Doc. 94 at 2). But that opinion did, in fact, provide a reason for rejecting Lucas County's motion. Lucas County's sole argument in its original motion was that, under Ohio law, "a county is not regarded as a body corporate, like a municipality, and cannot sue or be sued." (Doc. 68 at 2). This Court responded by noting that, regardless of any immunity that they might enjoy from suit under state law, counties do not generally enjoy immunity from suit under federal law, citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct.

568, 50 L.Ed.2d 471 (1977) for the proposition that "the bar of the Eleventh Amendment to suit in Federal courts extends to States and state officials in appropriate circumstances ... but does not extend to counties and similar municipal corporations." (Doc. 92 at 4).

Indeed, this Court, on March 16, 2009, rejected Lucas County's argument on this point in another § 1983 case with the following discussion:

> Defendants argue that a county is not regarded as a body corporate and cannot sue or be sued except where specifically authorized by statute. See *Stone v. Holzberger*, 807 F.Supp. 1325, 1333 (S.D.Ohio 1992) (citing Ohio Rev.Code § 301.22); (*Pancake v. Wakefield*, 102 Ohio App. 5, 140 N.E.2d 887 (Athens Cty.1956)); *Picciuto v. Lucas County Board of Commissioners*, 69 Ohio App.3d 789, 769 [796] [591 N.E.2d 1287] (1990). However, the United States Supreme Court has concluded that "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances ... but does not extend to counties and similar municipal corporations." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Sixth Circuit adopted this holding in *S.J. v. Hamilton County, Ohio*, when the court expressly affirmed the "portion of the district Court's order denying immunity to defendant Hamilton County, [Ohio]." 374 F.3d 416, 420 (6th Cir.2004).

*Sanford v. County of Lucas, Ohio*, No. 07–3588, 2009 WL 723227 at *3 (N.D.Ohio, March 16, 2009). Given this Court's square rejection of Lucas County's argument in *Sanford,* and the failure of Lucas County to address or even acknowledge that earlier decision, there was no need for anything more than a perfunctory statement of the legal basis for the denial of Lucas County's motion for dismissal in the instant case.

This was especially so because the legal basis for Lucas County's motion to dismiss remains entirely unclear. Since the motion cited only Ohio statutes and cases interpreting Ohio law, this Court (and the Plaintiff in this case) would have been fully justified in assuming that, like the motion of the Lucas County Sheriff's Department and Lucas County Jail considered contemporaneously, Lucas County's motion only sought dismissal of "any state law claims" brought against it. (Doc. 75 at 2–3).[1] Compounding matters, Lucas County's present motion simply repeats the discussion from its two previous motions, failing to address in any way this Court's stated reasons for rejecting them. Thus, far from presenting this Court with a "clear error of law" or any other proper Rule 59(e) ground for altering or amending the judgment, Lucas County's present motion fails even to clarify its earlier motion.

This Court's independent review of federal law indicates that there is some merit to the contention that "[i]n order to bring a viable § 1983 claim against a defendant, the defendant sued must be an entity that is subject to being sued [under state law]," *Seltzer v. Mobile City Police Dept.*, 2008 WL 3852679 at *2 (S.D.Ala., August 6,

---

1. Indeed, it appears that Plaintiff did in fact make this assumption. In her brief in opposition, she argued that "Defendant Lucas County's motion for judgment on the pleadings should be denied as moot," presumably because Plaintiff's First Amended Complaint asserted no state-law claims against Lucas County. (Doc. 88 at 6). Thus, Lucas County's contention that Plaintiff "failed to ... even mention" Lucas County's motion in its opposition brief (Doc. 94 at 2) is not correct. Moreover, as indicated above, the fault for any misapprehension on this point lies entirely with Lucas County.

2008). This is because, under Fed. R.Civ.P. 17(b), an entity's capacity to be sued is to be determined by state law. A closely-related question is whether a governmental entity that cannot sue or be sued qualifies as a "person" for the purposes of § 1983.

But this Court did not err in rejecting Lucas County's pseudo-arguments on these points. Having been forced to decide this issue three times now in the last several months on paltry briefing, the Court will engage in a longer discussion of this matter than is strictly necessary for disposition of this case, with the hope of clarifying issues relating to the legal status of Ohio political subdivisions under federal law, particularly insofar as they implicate difficult issues of sovereign immunity and federal preemption.

Courts have generally treated questions of whether a § 1983 suit may be brought against a "political subdivision" of a state, as this Court did in its two previous opinions on this matter, under the rubric of Eleventh Amendment sovereign immunity analysis, and have looked to whether the governmental entity in question shares the state's own immunity from suit. Thus, the Sixth Circuit has expressly permitted suits under § 1983 to proceed against Ohio counties, on the ground that counties do not enjoy sovereign immunity. See *S.J. v. Hamilton County, Ohio,* 374 F.3d at 420. So too, the Supreme Court has reasoned that a municipality, unlike a state, is a "person" under § 1983 because a state enjoys sovereign immunity, while a municipality does not. See *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In this way, courts have generally found a governmental entity's suability under § 1983 to be a function of the entity's sovereign immunity under federal law.

■ Indeed, the Ohio courts have treated the question of a county's capacity to be sued under Ohio law in an analogous way, as turning on the extent to which a county is an instrumentality of the State. Thus, the Ohio cases holding that a county cannot be sued have reasoned that "[c]ounties are local subdivisions of a State, created by the sovereign power of the State, of its own sovereign will," as opposed to "municipal corporations," which are not "superimposed by a sovereign and paramount authority." *State ex. rel. Ranz v. City of Youngstown,* 140 Ohio St. 477, 483, 45 N.E.2d 767 (1942) (quoting *Bd. of Com'rs of Hamilton County v. Mighels,* 7 Ohio St. 109, 118, 119 (1857) (Brinkerhoff, J.)). The essential logic of these venerable cases is that the State of Ohio decided, on its own sovereign initiative, to divide its territory into county units, while there was no analogous central planning regarding the creation of Ohio cities and other municipal entities. Instead, the latter entities were formed in the manner of a Lockean social contract, "either at the direct solicitation or by the free consent of the people who compose them." *Id.* It is thus apparent that, even under Ohio law, the question of a governmental entity's suability is not conceptually distinct from the question of the entity's sovereign immunity as an arm of the State.[2]

---

**2.** This discussion should also make clear that, despite Lucas County's reliance on Ohio Rev. Code § 301.22, the incapacity of Ohio political subdivisions to be sued actually derives from the common law of sovereign immunity. See *Mighels,* 7 Ohio St. at 117 (presenting the issue before the court as whether "the action [is] maintainable on the principles of the common law"). R.C. § 301.22 merely purports to set out the circumstances in which a county is deemed to have waived its common law immunity, codifying what would otherwise follow from *Mighels:* a county that adopts a separate form of government can no longer

■ The argument that an Ohio county is a "mere agency of the state," *Ranz,* 140 Ohio St. at 483, 45 N.E.2d 767, however, cannot be reconciled with the contrary analysis in *Mt. Healthy,* 429 U.S. at 280–81, 97 S.Ct. 568. In *Mt. Healthy,* the Supreme Court found that a "political subdivision" was not "the State" under Ohio law, and that a local school board (classified under Ohio law as a "political subdivision") consequently did not enjoy sovereign immunity from a § 1983 suit, as it was "more like a county or city" than "an arm of the State." *Id.* Where *Ranz* held that Ohio's "local subdivisions" generally enjoy sovereign immunity, *Mt. Healthy* held the opposite, and its analysis supersedes that of *Ranz,* at least in the context of § 1983 litigation. That is, a governmental entity's status under state law is not conclusive of whether that entity may be sued under federal law, though state law does provide evidence of whether a given entity is, in fact, "the State."

In the present case, there is no question that Lucas County, like the school board in *Mt. Healthy,* is a "political subdivision" of the State of Ohio, see Ohio Rev.Code § 2743.01(B). Thus, *Mt. Healthy* (as the Court has noted in both of its previous decisions on this issue) precludes the argument that Lucas County cannot be sued under § 1983.

■ An additional problem with Lucas County's position is that, in the special context of § 1983 actions, "a state law that immunizes government conduct otherwise subject to suit under 1983 is pre-empted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." *Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). That claim immunity as a mere instrumentality of

is, no Ohio law could grant immunity to Lucas County in a § 1983 action, even in an Ohio court, because of the general rule that "[p]laintiffs may bring suit [under § 1983] for damages against ... municipalities and other political subdivisions of a State." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. Of Health and Human Resources,* 532 U.S. 598, 609 n. 10, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Therefore, under Felder, Ohio law is pre-empted insofar as it would impose any barrier to bringing an otherwise-valid § 1983 action, and there is thus no Rule 17(b) problem with Lucas County's status as a party to this case.

■ But even assuming that all of the preceding discussion is incorrect and Lucas County cannot, in fact, be made a party to *any* action, even a § 1983 action in federal court, there is no question that the Board of Commissioners could nonetheless be sued on the County's behalf. See *Picciuto v. Lucas Cty. Bd. of Comm'rs,* 69 Ohio App.3d 789, 796, 591 N.E.2d 1287 (Ohio.App. 6 Dist.1990) ("The board of county commissioners, as a quasi-corporate body, represents the county in legal actions against the county"); *Stone v. Holzberger,* 807 F.Supp. 1325, 1333–1334 (S.D.Ohio 1992) (in case involving both federal and state claims, plaintiff permitted to amend her complaint to substitute Butler County Commissioners for Butler County two years after commencement of litigation). Thus, Lucas County has now filed two motions in this case to correct what appears to be, at the very most, the excusable neglect of a pleading formality. Even if Lucas County's motion were to be granted, the Plaintiff, under *Stone,* would be permitted to amend her complaint to substitute the county commissioners.

the State of Ohio.

There is certainly some doubt as to the validity of the broad § 1983 preemption concepts announced by the Supreme Court in decisions like *Felder*. See, e.g., *Haywood v. Drown*, —— U.S. ——, 129 S.Ct. 2108, 2133, 173 L.Ed.2d 920 (2009) (Thomas, J., dissenting) ("I cannot agree with the approach employed in *Felder*"); *Felder*, 487 U.S. at 163, 108 S.Ct. 2302 (O'Connor, J., dissenting) ("The concept of statutory pre-emption takes on new meaning today, and it is one from which I respectfully dissent."); compare *Johnson v. Fankell*, 520 U.S. 911, 918–21, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) (rejecting a *Felder*-based argument that § 1983 qualified immunity doctrine preempted an Idaho rule disallowing interlocutory appeals).[3] There is also some surface appeal to the idea that the scope of an entity's immunity from suit under federal law should be coextensive with its state-law immunity. But Lucas County has utterly failed to identify any basis in federal law for its contention that Plaintiff's § 1983 claim against it must be dismissed, and the Court today declines to invent one for its benefit.

Lucas County's motion for reconsideration (Doc. 94) is denied.

## III. Plaintiff's Motion for Reconsideration

■ In her motion for reconsideration, Plaintiff argues that this Court should have employed the "reasonableness" standard of the Fourth Amendment, and not the "shocks the conscience" test applicable to claims brought under the Fourteenth Amendment, in evaluating whether Leach, Ginn, and Villanueva were entitled to qualified immunity. Plaintiff's argument is not well taken.

For one thing, it is not an "argument that could not previously have been sub-

---

**3.** Indeed, although *Felder* is usually viewed as a case about the scope of federal preemption of state procedural requirements, the result in that case might best be understood in terms of sovereign immunity doctrine, as an application of the principle of *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (a case not cited by the *Felder* Court) that local governmental entities do not enjoy any form of sovereign immunity under § 1983. The Wisconsin statute at issue in *Felder*, which provided that a special notice-of-claim must be provided before a suit of any sort could be brought against a local governmental entity, was "part of a broader legislative scheme governing the rights of citizens to sue the State's subdivisions." *Felder*, 487 U.S. at 142, 108 S.Ct. 2302. As described by the *Felder* Court, "[t]he statute, both in its earliest and current forms, provides a circumscribed waiver of local governmental immunity that limits the amount recoverable in suits against local governments and imposes the notice requirements at issue here." *Id.*

In other words, the statute provided for a limited waiver of a local government's sovereign immunity, with the caveat that local governments would not be deemed to have consented to suits where the notice-of-claim provision had not been complied with. But given the premise of *Owen*, that local governments have no immunities to waive as against a valid federal exercise of the Fourteenth Amendment § 5 enforcement power, the holding of *Felder* follows: a local government cannot purport to retain immunity that it never possessed in the first place.

On this view, we do not have to see the Wisconsin law in *Felder* as the Court did, as being invalid on the broad ground that it was a procedural rule that impermissibly "burden[ed] the exercise of the federal right." *Felder*, 487 U.S. 131, 141, 108 S.Ct. 2302. Rather, the law in *Felder* was invalid because it constituted the assertion of a limited immunity from suit, and the substantive scope of any immunity (like other defenses) under a federal statute is generally understood as a question of federal law. This view would appear sufficient to explain the holding of *Felder* without reliance on the oft-maligned doctrine of "implied obstacle preemption." See generally Caleb Nelson, *Preemption*, 86 Va. L.Rev. 225, 226–33, 277 n. 170 (2000) (discussing the various forms of federal preemption and noting *Felder* as an obstacle preemption case).

mitted" to the Court, *Davie v. Mitchell,* 291 F.Supp. 2nd 573, 634 (N.D.Ohio 2003), but rather one that the Plaintiff simply failed to make. Though Plaintiff also contended, in her earlier opposition brief, that the "shocks the conscience" test was not applicable to her claims against Leach, Ginn, and Villanueva, she was equivocal as to which constitutional standard the Court should employ instead. See Doc. 88 at 5 ("Plaintiff has stated a cognizable constitutional claim of excessive force under the Fourth and/or Fourteenth Amendment."). The main thrust of her argument in that earlier filing, instead, was that "Defendants' motions are premature, thinly disguised motions for summary judgment." *Id.*[4]

Plaintiff switches tactics in her present motion. She now contends that the decedent "was not a pretrial detainee," Doc. 98 at 4, where she had previously conceded the opposite. See Doc. 88 at 5 ("Because *Darrah* [*v. City of Oak Park,* 255 F.3d 301 (6th Cir.2001) ], like *Claybrook* [*v. Birchwell,* 199 F.3d 350 (6th Cir.2000) ], did not involve claims of excessive force by pretrial detainees, those cases are inapposite to the case at bar."). Relying on *Phelps v. Coy,* 286 F.3d 295, 302 (6th Cir.2002), a case not cited in her earlier brief, Plaintiff argues, for the first time, that the decedent was subject to a "continuing seizure" when he encountered Leach, Ginn, and Villanueva at the Lucas County Jail.

Plaintiff has not provided any reason why she could not have presented these new arguments in her earlier opposition brief. As noted above, it is not the purpose of Rule 59(e) to provide an unhappy litigant a second chance to argue the merits of her position. If it were otherwise,

Rule 59(e) would provide dangerous opportunities for dilatory tactics and other varieties of litigious gamesmanship. On this ground alone, Plaintiff's motion for reconsideration must be denied.

■ Moreover, this Court is not convinced that it made any error at all, for Plaintiff's new *Phelps*-based arguments are without merit. The Sixth Circuit in *Phelps* emphasized repeatedly that the "continuing seizure" doctrine applies only where "an arrestee [is] in the custody of the arresting officers." *Phelps,* 286 F.3d at 300; see *id* at 300–301 (repeating the phrase "custody ... of the arresting officers" six times). But the First Amended Complaint does not allege that Leach, Ginn, and Villanueva were among the officers who arrested the decedent; rather, the decedent had already been arrested by other officers before being transferred to the Lucas County Jail. See Doc. 54 at para. 49. Since Leach, Ginn, and Villanueva are not alleged to have had any contact with the decedent when he was a "free citizen," the Fourth Amendment does not apply to their conduct in this case. See *Phelps,* 286 F.3d at 299–300 ("Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen [Fourth Amendment], convicted prisoner [Eighth Amendment], or something in between [Fourteenth Amendment].").

Finally, it should be noted that, even if the Court were to accept her argument that a "reasonableness" standard is applicable, Plaintiff would still not be able to prevail, as she has not provided citation to legal authority that would have put Leach, Ginn, and Villanueva on notice that their conduct was "unreasonable." See *Phelps,*

---

4. In its earlier opinion, the Court rejected this argument by noting that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Doc. 92 at 2 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

286 F.3d at 299 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (quoting *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

## IV. Conclusion

For the foregoing reasons, Defendant Lucas County's motion for reconsideration (Doc. 94) and Plaintiff's motion for reconsideration (Doc. 98) are denied

IT IS SO ORDERED.

*JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant Lucas County's motion for reconsideration is denied (Doc. No. 94).

FURTHER ORDERED that Plaintiff's motion for reconsideration is denied (Doc. No. 98).