**Harvey HESTER, Plaintiff–Appellant,**

v.

**Jack MORGAN, Defendant–Appellee.**

No. 01–5426.

United States Court of Appeals, Sixth Circuit.

Nov. 20, 2002.

Before KEITH and DAUGHTREY, Circuit Judges, and KATZ,* District Judge.

The plaintiff, Harvey Hester, is a Tennessee prison inmate who filed a § 1983 suit against the warden, Jack Morgan, and unnamed employees of the prison after he was assaulted and seriously injured by other prison inmates. The district court granted summary judgment to the warden and dismissed the case with prejudice. On appeal, the plaintiff alleges (1) that summary judgment was improperly granted and (2) that he was denied the right to amend his complaint to identify the unnamed defendants. We find no error in connection with either of these two issues and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hester filed this action seeking injunctive relief and compensatory and punitive damages for events occurring while he was confined at the Turney Center Industrial Prison and Farm in May 1998. Hester asserted that on May 16, 1998, he was attacked in the Turner Center recreation yard by two inmates carrying screwdrivers as weapons but that the incident ended quickly and without injury when guards approached. He contends that although one of the attacking inmates was placed in segregation that evening, the matter was not investigated further. Two days later, on May 18, Hester and two other inmates, James Dubose and Gary Donald, were attacked in the recreation yard by four inmates, including Steve Dalton, one of the inmates involved in the May 16 incident. This time the assailants carried homemade knives, or "shanks." Hester and Dubose received serious injuries from numerous stab wounds, and Donald was killed during the attack.

Hester's complaint, filed *pro se,* alleged three counts. Counts one and two, against "John Doe and others not presently known to plaintiff," alleged that unidentified prison employees exhibited deliberate indifference to the plaintiff's medical needs and safety before, during, and after the May 18th assault, in violation of the Eighth Amendment; that they failed to investigate the May 16th altercation, in violation of the Fourteenth Amendment; and that they forced the plaintiff to return to the general prison population despite the risk of danger to his personal safety. Count three, against defendant Jack Morgan, alleged that as the Turney Center warden, Morgan exhibited deliberate indifference to the plaintiff's safety by permitting a prison environment that was pervasively violent, thus creating an unreasonable risk of harm to Hester in violation of the Eighth Amendment.

Although the warden was served with process and filed a response to the complaint, the plaintiff did not take timely steps to amend the complaint to name the unidentified defendants, even though directed to do so in the scheduling order issued by the magistrate judge. Hence, the summary judgment motion at issue on appeal was filed only on behalf of defendant Morgan, although it covered all three counts of the complaint. As a result, once the district court found that the warden had not engaged in a constitutional violation, the court granted summary judgment on all counts and dismissed the action with prejudice. When Hester later filed his notice of appeal, he simultaneously filed a motion to amend his complaint to identify

---

* The Hon. David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

the unnamed defendants. The district court did not rule on the motion to amend, undoubtedly because the court recognized that it had lost jurisdiction of the case by virtue of the filing of the notice of appeal. *See Pittock v. Otis Elevator Co.,* 8 F.3d 325, 327 (6th Cir.1993).

## II. *DISCUSSION*

On appeal, Hester asserts that the district court erred in granting summary judgment to Morgan in three ways: by deciding that Turney Center is not a violent place, by incorrectly weighing the evidence and not taking account of affidavits filed by Hester, and by misapplying Eighth and Fourteenth Amendment case law. He also asserts that the district court refused to allow him to amend his complaint to name the "John Doe" defendants.

We review a grant of summary judgment *de novo. See Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A reviewing court must draw all inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, "[s]ummary judgment is appropriate only when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Curry v. Scott,* 249 F.3d 493, 505–06 (6th Cir.2001) (citing *Celotex Corp. v. Catrett,* 477 U.S.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### A. Summary Judgment for Defendant Morgan

■ In count three, containing the sole complaint against defendant Morgan, the plaintiff alleges that Morgan violated § 1983 by depriving him of his Eighth Amendment rights. To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, Hester must prove that Morgan acted with "deliberate indifference" to a substantial risk of serious harm. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Street v. Corrections Corp. of Am.,* 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 78 (6th Cir.1995). Deliberate indifference is a state of mind more blameworthy than negligence, but it entails "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835, 114 S.Ct. 1970. Under the standard set by the Supreme Court, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970; *see also LeMarbe v. Wisneski,* 266 F.3d 429, 435 (6th Cir.2001).

Under this standard, Hester must show that he was incarcerated under conditions posing a substantial risk of serious harm and that Morgan exhibited the state of mind of deliberate indifference to inmate health or safety. *See Street,* 102 F.3d at 814 (citing *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970). Thus, Morgan is only liable under the Eighth Amendment if there was a substantial risk of serious harm to the plaintiff, Morgan knew of the risk, and Morgan disregarded the risk. *See Woods*

*v. Lecureux,* 110 F.3d 1215, 1222 (6th Cir. 1997). We conclude that Hester's case falls short in each regard. First, he has not provided evidence that, when viewed in the light most favorable to him, demonstrates that there was a substantial risk of serious harm to inmates generally, or to himself specifically. Hester's evidence consists only of five affidavits from inmates currently or previously incarcerated at Turney Center. Four of these affidavits describe a small number of isolated incidents of inmate-on-inmate violence at the prison. The fifth affidavit is from a prisoner who witnessed the attack on Hester. These affidavits do not establish a genuine issue of material fact about the pervasiveness of inmate-on-inmate violence at Turney Center, and none of the incidents is said to have occurred during defendant Morgan's tenure as warden.

The mere fact that Turney Center housed some violent prisoners or that violence among the inmates would sometimes occur does not establish an Eighth Amendment violation. *See Woods,* 110 F.3d at 1225; *Gibson v. Foltz,* 963 F.2d 851, 854 (6th Cir.1992). There is no evidence that the risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Street,* 102 F.3d at 815 (quoting *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970). In fact, the undisputed facts show that inmates at Turney Center did not face a significant risk of inmate-on-inmate assault while Morgan was warden of the facility. Morgan became the warden at Turney Center on May 27, 1997. During the period from May 1997 to May 1998, the facility housed between 983 and 1129 inmates, averaging 1069 inmates per month. In that same period, prior to the incident involving

Hester on May 18, 1998, there were only three inmate-on-inmate assaults with a weapon at the prison. One of the three assaults occurred in May 1997, prior to Morgan's assignment as warden. None of them occurred on the recreation field. None resulted in death. Based on an average inmate population of 1069 during this time frame and a total of three assaults involving a weapon, it appears that there was a less than 0.3 percent chance of an inmate-on-inmate assault involving a weapon.

The undisputed facts also indicate there were security practices and procedures in place from May 1997 to May 1998. Inmates and cells would be subjected to random searches for contraband and weapons. All inmates exiting the prison industry plants were screened by walk-through metal detectors, and hand-held detectors were also routinely used in searching inmates. In addition, all inmates arriving at the facility through the vehicle entrance were screened by walk-through metal detectors. There were typically two corrections officers at the gate to the recreation field and a third circling the perimeter. All three of these guards were at their designated position when the assault involving Hester occurred. The plaintiff appears to believe a lack of random strip-searches for weapons at the entrance to the recreation field establishes inadequate security checks, but it does not. The prison had never had an assault with a weapon on the recreation field, and nothing in the record suggests that such a security check was necessary for adequate protection.

Just two months before the plaintiff was attacked, in February 1998, the American Correctional Association (ACA)[1] per-

---

1. The ACA is a private, non-profit organization that administers a national accreditation program for all components of adult and juve-

nile corrections. The ACA offers a prison facility the opportunity to evaluate its facility against national standards, with the goal of

formed an audit and inspection of Turney Center. The ACA auditors evaluated the conditions of confinement and found "the overall quality of life to be outstanding." The report also stated that "[s]ecurity is well-maintained and adequate," and that "a safe and humane environment is being provided by a caring administration and dedicated staff." In accord with the ACA evaluation of the environment at Turney Center, Hester testified that he did not have any warning he might be in danger from any other inmate and that he did not belong to any group which was being threatened by other inmates. Based on these facts, we conclude that the plaintiff has not established a genuine issue of material fact as to nature of the living conditions at Turney Center.

We also find that Hester's claim falls short on the second factor of the analysis. Even if the living conditions did present a substantial risk of serious harm, Hester has not provided evidence that, when viewed in the light most favorable to him, demonstrates that Morgan knew of that risk. No *direct* evidence exists to demonstrate that Morgan know Hester risked physical assault on May 18. Morgan had been a part of the ACA audit two months before the attack, at which time the ACA reported the quality of life was "outstanding" and security was "well-maintained and adequate." Morgan had no personal knowledge of any significant risk of harm in the general prison population at Turney Center, and he specifically testified that he

had no personal knowledge of any particular problems specific to the plaintiff, or evidence of threats against the plaintiff. Hester admitted in his deposition that he was aware of the prison's protective custody policy and procedure, which, when requested, would result in notice being given to the warden, but Hester never requested protective custody.[2] Indeed, he did not feel threatened by, nor had he previously fought with, any of the individuals involved in the May 16 fight before that day. Hester admits the individuals involved in the May 16 fight quickly dispersed without injury when prison officials approached.

The plaintiff also does not present sufficient *circumstantial* evidence to create an issue of fact as to whether Morgan knew about the May 16 fight and, therefore, should have known that the plaintiff faced a substantial risk of harm afterwards. Hester testified at his deposition that when the officer in charge of the plaintiff's pod, Officer Denson, asked him what had happened, he told Officer Denson about the fight. However, the issue is whether Morgan had knowledge of the risk of subsequent injury, and the plaintiff offers at best a vague assertion that Morgan might have heard that Hester felt threatened from Officer Denson. Obviously, the plaintiff cannot rely on such speculation to demonstrate that Morgan knew that the plaintiff faced a substantial risk of serious harm. We conclude that no rational trier-of-fact could find, based on the direct and circumstantial evidence submitted, that

---

remedying deficiencies and improving the quality of programs and services. *See* American Correctional Association, http://www.aca.org. Turney Center has been accredited by the ACA since 1992.

**2.** The mere fact that Hester did not request such custody is not dispositive, because "warnings from the prisoner himself are not required when other evidence discloses a substantial risk of serious harm." *Woods,* 110

F.3d at 1224 (citing *Farmer,* 511 U.S. at 848, 114 S.Ct. 1970 ("[T]he [prisoner's] failure to give advance notice [to prison officials] is not dispositive. Petitioner may establish respondents' awareness by reliance on any relevant evidence.")). However, if Hester had requested such custody, Morgan would have been made aware that Hester's safety was in danger.

Morgan actually knew Hester faced a substantial risk of serious harm.

Hester's case fails to meet the third prong of the analysis as well. Even if the record demonstrated a substantial risk of serious harm, and even if Morgan had known of that risk, Hester has not provided evidence that, when viewed in a light most favorable to him, demonstrates that Morgan disregarded such a risk. To the contrary, the evidence in this case indicates that during Morgan's tenure as warden at Turney Center, he was attentive to and took pride in the living conditions of the prison. Nothing in the record indicates that Morgan did not respond reasonably to any known risks at the prison. *See Woods*, 110 F.3d at 1225.

In sum, like the district court, we find insufficient evidence that there was a pervasive or well-documented risk of violent attacks at Turney Center under Warden Morgan's administration. Although the assault on the plaintiff was unfortunate, and the injuries he suffered regrettable, the record indicates that prison officials had taken appropriate precautions to prevent such attacks. Despite precautions, it is impossible to stop all random acts of violence in the prison environment. Furthermore, there is no evidence that Morgan knew of, and disregarded, substantial risk of serious injury to the plaintiff or to other inmates. Therefore, we conclude that summary judgment was properly granted to defendant Morgan.

### B. The Unnamed Defendants

 Finally, we reject out of hand the plaintiff's claim that he was improperly denied the right to amend counts one and two of the complaint to identify the "John Doe defendants," especially the medical personnel who responded to the prison on the day he was assaulted. Although Rule 15 of the Federal Rules of Civil Procedure recognizes a party's right to amend the complaint once "as a matter of course" prior to the filing of a responsive pleading and indicates that, thereafter, permission to amend should "be freely given when justice so requires," Fed.R.Civ.P. 15(a), the rule nevertheless assumes timeliness. And it is timeliness that is missing in connection with the motion to amend in this case.

As the magistrate judge's Report and Recommendation to the district court indicates, "the scheduling order permitted a period for the amendment of the pleadings, [but] the plaintiff did not amend his complaint to name any individuals or attempt to have anyone other that defendant Morgan served in the action." The plaintiff then omitted to file objections to the magistrate judge's report. Nor does the record reflect that he filed a motion to extend the time for filing an amendment, or made any other attempt to amend prior to the entry of the district court's order granting summary judgment to Morgan and dismissing the case with prejudice. Indeed, there was no motion to reconsider that order, which made no specific ruling as to the unnamed defendants. Instead, the plaintiff waited to file a motion to amend on the same date that he filed his notice of appeal in this case. Once filed, that notice of appeal deprived the district court of jurisdiction in this case and mooted the late-filed motion to amend. *See Pittock*, 8 F.3d at 327.

### III. *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court in all respects.