Anthony PEART, Plaintiff

v.

SENECA COUNTY, et al., Defendant.

Case No. 3:09CV1258.

United States District Court,
N.D. Ohio,
Western Division.

Aug. 18, 2011.

Michael I. Shapero, David S. Michel, James A. Marx, Shapero & Green, Beachwood, OH, for Plaintiff.

Mark D. Landes, Adam J. Hensel, Brandi L. Dorgan, Isaac, Brant, Ledman & Teetor, Columbus, OH, for Defendants.

## ORDER

JAMES G. CARR, Senior District Judge.

█ This suit arises from an unprovoked assault on the plaintiff, Anthony Peart, by co-defendant Larry White while both were inmates at the Seneca County, Ohio, Jail. Peart brings this suit under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights.[1] He also asserts state law claims for negligence and violation of O.R.C. § 2921.44.

Seneca County, its former Sheriff, Thomas Steyer, and its Commissioners, Benjamin Nutter, David Sauber, Sr., and Michael Bridinger, have filed a motion for summary judgment. [Doc. 39]. For the reasons that follow, the motion shall be granted in part and denied in part.

## Background

Following Peart's arrest and conviction on a charge of falsification, authorities determined that he was an alien and not lawfully in this country. Officers from the Immigration and Customs Enforcement Agency (ICE) took him into custody and lodged him in the Seneca County Jail in May, 2008.

The jail houses immigration detainees pursuant to a contract with ICE. The contract requires booking officials to collect objective criteria (*e.g.*, criminal history,

---

1. Peart alleges that defendants violated his Eighth and Fourteenth Amendment right. As a person awaiting deportation, Peart's claims are akin to those of a pre-trial detainee and are thus subject to analysis under the due process clause of the Fourteenth Amendment. *See Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir.2000) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447). A due process claim for failure to protect is analyzed using the same standard as the Eighth Amendment. *See Roberts v. Troy*, 773 F.2d 720, 723 (6th Cir.1985) ("[P]retrial detainee ... was not within the protection of the Eighth Amendment; [but] the Eighth Amendment rights of prisoners are analogized to those of detainees under the Fourteenth Amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial.").

disciplinary history, and current charge), tally a score based on this information, and assign detainees a security level according to the score. The contract requires low and high security detainees to be separated. [Doc. 47–2 at 18].

Seneca County Jail had classification forms consistent with the ICE standards for booking.

On Peart's booking into the jail, Officer Cover did not complete a classification form. He did not investigate Peart's criminal history or disciplinary history. He placed Peart in a block housing both regular jail detainees and ICE detainees.

Likewise, when officers placed his assailant, White, in custody in the jail, Officer Stafford made no attempt to classify him. White had been an inmate in the past and had made documented threats to inmates and officers. White's criminal history included incidents of violence.

White had never previously been assaultive while in the Seneca County Jail. Jail officials had, however, previously housed him in the block reserved for violent offenders. Two internal reports indicate White's "violent behavior" caused officers to use tasers to subdue him. [Doc 47–3 at 83, 85]. Sheriff Steyer states that he "personally observed" White threatening individuals and "constantly" received reports about his behavior. [Doc. 47–3 at 108]. White bragged to jail officials that he was the "baddest dude in here" making "a living knocking people down." [Doc. 47–3 at 101, 110].

It is apparent that Officer Stafford either did not know or did not care about White's record of violent propensities when he assigned him to the same block as Peart. In any event, Officer Stafford failed to follow the jail's risk assessment procedures when booking White.

On June 10, 2008, Peart was watching television in the common area when he began to argue with another inmate, Matt Peace. White walked out of his cell, confronted and hit Peart, who fell to the cement floor, striking his head and losing consciousness. Among other injuries, he sustained a skull fracture and brain hemorrhaging.

Peart filed suit in the Seneca County Court of Common Pleas on May 5, 2009. The defendants removed the case to this court on June 2, 2009. Defendants seek summary judgment as to all claims.

### Standard of Review

A party is entitled to summary judgment on motion under Fed.R.Civ.P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleading" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs. Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of material fact.

*Celotex, supra,* 477 U.S. at 323, 106 S.Ct. 2548.

## Discussion

In support of their request for summary judgment, defendants argue that Seneca County is not a proper party to this action. Defendants also claim that Peart's § 1983 claim fails both because Peart cannot demonstrate that defendants were deliberately indifferent to a substantial risk of harm, and because Peart has not shown a policy or practice caused the deprivation of his rights. Defendants contend that Sheriff Steyer and the County Commissioners are entitled to qualified immunity for claims against them in their individual capacity. Finally, defendants argue that they are entitled to immunity for Peart's state law claims.

Apart from their initial argument that Seneca County is not a proper party, the crux of defendants' summary judgment motion is that White's attack on Peart was random and unforeseeable. The attack certainly was random. And it's fair to contend that none of the defendants specifically anticipated that White would attack Peart.

But that's not the issue. The issue is, rather, whether complete abandonment of any effort to classify inmates, so that there is no reasonable attempt to segregate the violence-prone, or even mentally unstable and unpredictable from non-violent inmates, constitutes constitutionally cognizable deliberate indifference.

For the reasons that follow, I conclude that a jury could find that it does. I also conclude that a jury could find that non-classification was an official policy, so that vicarious liability can attach. Finally, I conclude that the duty to take reasonable and available steps to ensure inmate safety from violent attacks is so well established that the defendants are not entitled to immunity.

### A. Seneca County Is a Proper Defendant

Defendants argue that Seneca County must be dismissed as a defendant because it lacks the capacity to be sued. An entity's capacity to be sued in federal court is determined by state law. Fed.R.Civ.P. 17(b). Under Ohio law, counties adopting a charter or alternative form of government are "capable of suing or being sued." O.R.C. § 301.22. Thus, defendants argue, counties not adopting a charter are *non sui juris.*

■ There is no question that a municipality or other local government body, such as Seneca County, becomes a "person" subject to suit under § 1983 when implementing an unconstitutional policy or custom.[2] *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); 42 U.S.C.

---

**2.** The Supreme Court in *Monell* recognized that a municipalities and other local governments could be considered a "person" for the purposes of § 1983. But this decision has two important restrictions. First, liability may only be imposed where there is a "policy or custom" that inflicts the complained of injury. *Monell, supra,* 436 U.S. at 694, 98 S.Ct. 2018. Second, such liability may only be imposed where it is consistent with the Eleventh Amendment—that is, it applies only "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 691 n. 54, 98

S.Ct. 2018. The Eleventh Amendment does not bar suits against municipalities or political subdivisions of a state. *See, e.g., N. Ins. Co. v. Chatham Cnty.,* 547 U.S. 189, 193, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Lincoln Cnty. v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). This is true even where counties may "exercise a 'slice of state power.'" *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

§ 1983. But defendants argue that the questions of capacity and immunity are distinct.

The question before me is whether the county's lack of capacity to sue or be sued under Ohio law precludes its amenability to a § 1983 claim pursuant to *Monell.* As Judge Frost of the Southern District of Ohio observed, the Sixth Circuit has yet to address this issue directly, and the federal district courts have dealt with it inconsistently. *Stack v. Karnes,* 750 F.Supp.2d 892, 894–95 (S.D.Ohio 2010) (collecting cases).

Defendants argue that I should follow those district courts holding "counties, as political entities, are not sui juris; they are held accountable through their elected representatives, to wit, their commissioners." *McGuire v. Ameritech Servs., Inc.,* 253 F.Supp.2d 988, 1015 (S.D.Ohio 2003). Ohio law provides that a county's board of commissioners is able to sue and to be sued. R.C. § 305.12.

But as the other courts have pointed out, the rationale underpinning counties' lack of capacity under Ohio law is "not conceptually distinct from the question of the entity's sovereign immunity as an arm of the state." *Turner v. Toledo,* 671 F.Supp.2d 967, 971 (N.D.Ohio 2009). Ohio courts have treated the question of a county's capacity to be sued as turning on the extent to which a county is an instrumentality of the state. *State ex rel. Ranz v. Youngstown,* 140 Ohio St. 477, 483, 45 N.E.2d 767 (1942) (comparing counties to municipal corporations, which are not "superimposed by a sovereign and paramount authority"). Defendants assert that Ohio counties thus lack capacity for the same reason counties in the past asserted sovereign immunity—Ohio law treats them as an arm of the state.

■ But the Supreme Court has held that a political subdivision is not "the State" and cannot enjoy sovereign immunity from a § 1983 suit. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280–81, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Thus, "a governmental entity's status under state law is not conclusive of whether that entity may be sued under federal law, though state law does provide evidence of whether a given entity is, in fact, 'the State.'" *Turner, supra,* 671 F.Supp.2d at 972.

■ Moreover, in the special context of § 1983 actions, "a state law that immunizes government conduct otherwise subject to suit under 1983 is pre-empted ... because the application of state immunity law would thwart the congressional remedy." *Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Section 1983 preempts Ohio law where it imposes a barrier to bringing an otherwise valid claim, and therefore Rule 17(b) does not bar this suit against the county.[3]

### B. Section 1983 Claim

To prevail under § 1983, a plaintiff must show: 1) the deprivation of a right secured by the Constitution or a federal statute, and 2) a person acting under color of state law caused the deprivation of the right. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

To maintain his claims against the defendants, Peart must also show that the deprivation resulted from an action under

3. As defendants point out, Ohio law provides that a county's commissioners have the ability to sue and to be sued, and Peart has named each of Seneca County's commissioners in his or her official and individual capacity. Dismissing Seneca County would have no effect on the claims or remedies available here, and even if the preceding discussion is incorrect, such dismissal would achieve nothing more than to correct a pleading formality.

an official policy or custom of the government entity. *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Napier v. Madison Co.*, 238 F.3d 739, 743 (6th Cir.2001).

### 1. Deprivation of Right

■ Prison and jail officials have a constitutional duty to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Prison officials must take "reasonable measures to guarantee the safety of the inmates," *Id.* at 832, 114 S.Ct. 1970, which includes "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833, 114 S.Ct. 1970 (citing *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).

■ "[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). The plaintiff must demonstrate that there was "deliberate indifference to inmate health or safety." *Farmer, supra*, 511 U.S. at 834, 114 S.Ct. 1970 (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 302–303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

Deliberate indifference is defined as knowing and disregarding an excessive risk to inmate safety. *Farmer, supra*, 511 U.S. at 837, 114 S.Ct. 1970. Defendants are liable "if there was a substantial risk of serious harm to the plaintiff, [defendants] knew of the risk, and [defendants] disregarded the risk." *Hester v. Morgan*, 52 Fed.Appx. 220, 222–23 (6th Cir.) (unpublished disposition) (citing *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir.1997)).

■ Peart has demonstrated that there is a genuine issue of material fact as to whether defendants' complete abandonment of any effort to classify inmates created a substantial risk of serious harm. The standards required by ICE and by the Seneca County Jail's written policy reflect that a failure to classify can put inmates and detainees at risk of serious injury. Moreover, there are ample indications that jail officials recognized that White was both dangerous and unpredictable.

Other courts have recognized that the failure to classify inmates appropriately is to disregard a substantial risk of serious harm and thus violates the Constitution. *Jensen v. Clarke*, 94 F.3d 1191 (8th Cir. 1996). In *Jensen*, booking officers received an inmate compatibility report that relied on objective criteria like criminal history and gang affiliation. *Id.* at 1194. The officers ignored the report and classified inmates based on their own subjective assessments. *Id.* The Eighth Circuit affirmed the trial court's holding that prison officials disregarded a substantial risk of serious harm in violation of the prisoners' constitutional rights.

Here, as in *Jensen*, Peart has put forth evidence that the defendants systematically failed to use objective classification information when deciding where to house newly arrived inmates.

The defendants argue none of the named defendants had the requisite knowledge because White's attack on Peart was random and unforeseeable.

But it is "irrelevant to liability," *Farmer, supra*, 511 U.S. at 844, 114 S.Ct. 1970, that the defendants could not foresee who would attack whom. The significant issue, rather, is whether officials knew that failure to implement a classification system to segregate potentially violent inmates created a substantial risk to other detainees.

A fact-finder may infer from the evidence that the official had the requisite

knowledge. *Id.* at 842, 114 S.Ct. 1970. The jail's contract with ICE required a classification protocol that relied on objective criteria like prior convictions and the severity of the most recent charge. The explicit purpose of this system was to make "conditions safer for all who work or live there." [Doc. 34–1 at 72]. The jail's internal Policies & Procedures manual contained a similar procedure and rationale.[4] [Doc. 34–3 at 14–15]. Taking the evidence in the light most favorable to the plaintiff, there is a genuine issue of material fact as to whether officials knew or should have known that abandoning this safeguard created a substantial risk of harm.

### 2. Government Policy or Custom

Defendants characterize the events giving rise to Peart's injuries as isolated incidents of booking officer misconduct. Defendants may not be held liable under § 1983 for an isolated incident on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

To sustain his § 1983 claim against the county, commissioners and sheriff, Peart must show that his injury was caused by an action pursuant to the government entity's policy or custom. *Id.*

There are five possible ways to establish the existence of a policy or custom sufficient to impose § 1983 liability on the county. First, actions by the board of commissioners constitute official policies. *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Second, official policy exists when there are actions taken by agencies or boards exercising authority delegated by the county. *Monell, supra,* 436 U.S. at 661, 98

S.Ct. 2018. Third, actions by those with final authority for making a decision constitute official policy. *Pembaur, supra,* 475 U.S. at 483–84, 106 S.Ct. 1292. Fourth, failure to train or supervise that amounts to deliberate indifference to the plaintiff's rights establishes a policy of inadequate training or supervision. Finally, demonstrating existence of a custom also establishes liability under § 1983.

Defendants argue that there was no policy requiring or allowing jail officers to house violent offenders with those to whom they wish to do violence. It is obvious that no such written policy existed.

But the evidence Peart has presented creates a genuine issue of material fact as to whether the sheriff's actions or failure to act regarding classification constituted official policy and whether there was a failure to train or supervise.

### a. Individuals with Final Decision-Making Authority

▮ As the Supreme Court recognized in *Pembaur, supra,* 475 U.S. at 480, 106 S.Ct. 1292, "the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell's* language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy' and whose decisions therefore may give rise to municipal liability under § 1983." (quoting *Monell, supra,* 436 U.S. at 694, 98 S.Ct. 2018).

▮ Derivative liability cannot be imposed merely because an employee has discretion in the discharge of his or her duties—an official must "be responsible for

---

4. The fact that prison officials disregarded a readily available alternative bolsters a finding of deliberate indifference. *Miller v. Shelby,* 93 F.Supp.2d 892, 900 (W.D.Tenn.2000) (allowing inmates of different classifications to take recreation together constituted deliberate indifference); *Jensen v. Gunter,* 807 F.Supp. 1463, 1484 (D.Neb.1992), *aff'd sub nom. Jensen v. Clarke,* 94 F.3d 1191 (8th Cir.1996).

establishing final government policy" in order for municipal liability to attach. *Pembaur, supra,* 475 U.S. at 483, 106 S.Ct. 1292. The determination of who has final decision-making authority is a question of state law. *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 786, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (citing *Pembaur, supra,* 475 U.S. at 483, 106 S.Ct. 1292); *Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

Under Ohio law, the Sheriff is a county official. *Pembaur v. Cincinnati,* 746 F.2d 337, 341 (6th Cir.1984), *rev'd on other grounds,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). As the Sixth Circuit observed,

> The Sheriff is elected by the residents of the County, Ohio Rev.Code Ann. § 311.01 (Baldwin 1982), and serves as the "chief law enforcement officer of the county." 1962 Op. Att'y Gen. No. 3109. He submits his budget requests to the Board, Ohio Rev.Code Ann. § 311.20, which in turn furnishes his office, books, furniture, and other materials. Ohio Rev.Code Ann. § 311.06. His salary and all training expenses are also paid out of the general county fund. Ohio Rev. Code Ann. §§ 325.01–06. Although none of these factors is itself determinative, we believe it is obvious that the Sheriff is a County official. Moreover, we believe that the duties of the Sheriff, as enumerated in Ohio Rev.Code Ann. § 311.07, and his responsibility for the neglect of duty or misconduct of office of each of his deputies, see Ohio Rev.Code Ann. § 311.05, clearly indicate that the Sheriff can establish county policy in some areas.

*Id.* at 341.

Ohio sheriffs are the final county policy makers in the area of jail administration. O.R.C. § 341.01 provides that the sheriff:

> shall have charge of the county jail and all persons confined therein. He shall keep such persons safely, attend to the jail, and govern and regulate the jail according to the minimum standards for jails in Ohio and promulgated by the department of rehabilitation and correction.

The defendants argue that Sheriff Steyer did not ratify housing Peart and White in the same block, and that Sheriff Steyer had no role in classifying either inmate.

But Peart has presented evidence indicating that Sheriff Steyer implemented an informal classification system that failed to segregate non-criminal detainees from violent inmates. In his deposition, Sheriff Steyer testified that he did not believe that every individual coming into the jail had a classification form filled out. [Doc 34, at 63]. He testified that he "make[s] sure" other officers are responsible for classification, but he did not know what, if any, training these officers received. He was also aware that written forms were not filled out. *Id.* And he testified that he did not make sure that officers were classifying individuals entering the jail.

This evidence creates a genuine issue of material fact, such that a reasonable jury could conclude that Sheriff Steyer, by statute responsible for the safe operation of the jail, was the final decision-maker for the County as to operational policies within Seneca County Jail. A rational jury could also find that, in that capacity he knowingly implemented a policy of informal, subjective and standard-less classification that created a substantial and readily apparent risk of injury to the plaintiff. Finally, a jury could also find that, in violation of Peart's constitutional rights, Sherriff Steyer was deliberately indifferent to the danger that this conduct created.

### b. Policy of Inadequate Training or Supervision

In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that demonstrating a policy of inadequate training requires proof of deliberate indifference by the local government.

 "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Perez v. Oakland Cnty.,* 466 F.3d 416, 430–31 (6th Cir.2006) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

As discussed above, inmate-on-inmate violence is a foreseeable and serious consequence of inadequate classification of prisoners. *E.g., Jensen, supra,* 94 F.3d at 1198–99. There is an undeniable link between the inadequate classification decisions here and the injury alleged, and this case falls into the narrow range of circumstances under which a "single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Brown, supra,* 520 U.S. at 409, 117 S.Ct. 1382.

 None of the custodial officers responsible for classifying inmates or detainees in the Seneca County Jail could recall being questioned or reviewed with respect to their classification determinations. Nor could they recall receiving any formal training on this task. There is direct evidence that in the case of two inmates, Peart and White, the guards made no effort to discover their criminal histories, indicia of violent propensities or disciplinary histories.

A jury could find that failure to classify these inmates goes beyond mere carelessness. As discussed above, Sheriff Steyer was aware that classification forms were not being completed. He did not supervise classifications or ensure that jail officers had appropriate training. He testified that he did not give classification any priority. Peart has thus submitted evidence that Sheriff Steyer "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999).

Peart has created a genuine issue of material fact such that a jury could find the existence of a policy of a failure to train or supervise jail employees.

Peart has also submitted evidence that shows defendants' policy or custom caused his harm. Had officials used the objective classification forms, a jury could find that Peart and White, respectively Level 1 and 3 detainees, would have been separated. [Doc. 34–2 at 67; Doc. 45 at 35–36; Doc. 47–2 at 19].

### 3. Qualified Immunity

Defendants Steyer, Nutter, Sauber, and Bridinger assert a qualified immunity defense for claims against them in their individual capacity. Qualified immunity protects government officials from civil liability when their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The threshold question is whether these defendants violated Peart's constitutional rights. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). For the foregoing reasons, a jury could find that they did.

The next question is whether the right they violated was clearly established. *Haynes v. City of Circleville, Ohio,* 474 F.3d 357, 362 (6th Cir.2007). A detainee's constitutional right to be housed in a reasonably safe environment has long been firmly established. *See, e.g., Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Wilson v. Yaklich,* 148 F.3d 596, 600 (6th Cir.1998). This conclusion is enough to settle the issue.

The defendants would define the right more narrowly as an inmate's right to be protected from violence through a reasonable classification system. This is a closer call. At least two courts have held that the Constitution requires jailers to classify and separate potentially violent inmates. *Calderon–Ortiz v. LaBoy–Alvarado,* 300 F.3d 60 (1st Cir.2002) (sodomized victim stated claim for deliberate indifference when guards failed to classify or regularly patrol); *Dawson v. Kendrick,* 527 F.Supp. 1252, 1294 (S.D.W.Va.1981).

The Sixth Circuit has twice held that supervisors may be held liable when inmates' placements leave them vulnerable to attack. *Greene v. Bowles,* 361 F.3d 290, 293 (6th Cir.2004) (holding warden could be liable when transsexual housed with a predatory inmate); *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76 (6th Cir.1995) (holding warden may be liable when subordinates transferred vulnerable inmate to high risk facility without reviewing his file).

The duty of jail officials to take reasonable steps to protect inmates from the danger posed by potentially violent fellow inmates is well established, and stands on a firm statutory and constitutional footing. Were a jury to find that the defendants breached their constitutional obligations to the plaintiff, they would not be entitled to immunity.

## C. State Claims

### 1. Causes of Action Under State Law

Peart has alleged a negligence claim and a claim under O.R.C. § 2921.44. Defendants assert immunity on these claims. They do not challenge the adequacy of the negligence claim itself, but they argue that Peart may not assert a claim under § 2921.44. Defendants are correct.

Section 2921.44 provides that "[n]o officer, having charge of a detention facility, shall negligently [ . . . ] fail to [ . . . ] prevent [ . . . ] physical harm to a prisoner by another [and that] [n]o public servant shall recklessly fail to perform a duty expressly imposed by law." The statute provides that anyone in violation "is guilty of dereliction of duty, a misdemeanor of the second degree." *Id.*

Section 2921.44(C) is part of the criminal code. It is intended to deter an officer from neglecting his duties by providing criminal sanctions for such a failure. It does not purport to create civil liability, nor does it change the common law and constitutional duty of officers to exercise reasonable care and diligence to protect prisoners from danger. *See Justice v. Rose,* 102 Ohio App. 482, 484, 144 N.E.2d 303 (1957). It is inapplicable to the civil lawsuit brought by Peart, and summary judgment is granted in favor of defendants on this claim. *DePaolo v. Brunswick Hills Police Dep't,* 2007 WL 2071947, *10 (N.D.Ohio).

### 2. Immunity as to State Law Claim

#### a. Official Capacity

Whether immunity bars recovery is a legal issue properly determined by the court. *Linley v. DeMoss,* 83 Ohio App.3d 594, 599, 615 N.E.2d 631 (1992).

O.R.C. § 2744.01 sets forth a three-tiered analysis to determine whether a political subdivision is immune from liability.

Section 2744.02(A)(1) provides a political subdivision with a general grant of immunity from liability for acts or omissions connected with its governmental or proprietary functions. Section 2744.02(B) lists five exceptions to this general grant. If one of the § 2744.02(B) exceptions applies, immunity may still be reinstated if one of the defenses contained in § 2744.03 applies. *See Cater v. Cleveland,* 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998).

It is beyond dispute that Seneca County, the Seneca County Commissioners, and the Seneca County Sheriff are political subdivisions as defined by O.R.C. § 2744.01(F). Therefore, the three-tiered analysis applies to determine whether the defendants are immune from liability.

### i. Immunity for Governmental or Proprietary Function

Section 2744.02(A)(1) grants a political subdivision general immunity from civil liability when an injury results from the performance of a governmental or proprietary function. The first step therefore is to determine whether the act at issue is a governmental or proprietary function.

Peart argues that the housing of non-criminal detainees pursuant to a contract with ICE is not a governmental function.

O.R.C. § 2744.01(C)(2) lists specific functions expressly designated as governmental functions. Defendants argue that § 2744.01(C)(2)(h) designates the housing of detainees as a governmental function.

Section 2744.01(C)(2)(h) provides that a governmental function includes, *inter alia,* the "operation of jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code." O.R.C. § 2921.01(F) in turn defines detention facility as "any public or private place used for the confinement of a person charged with or convicted of any crime in this state or another

state or under the laws of the United States or alleged or found to be a delinquent child or unruly child in this state or another state or under the laws of the United States."

As Peart points out, § 2921.01(F) applies only to criminal detainees. Immigration detainees are not "criminals" in the legal sense, and their incarceration does not constitute punishment. *See* 28 U.S.C. § 1915(h). Seneca County Jail's contract with ICE included housing non-criminal detainees, like Peart. The operation of Seneca County Jail, as a whole, is covered by § 2744.01(C)(2)(h), but the County chose to enter into a contract with ICE that altered in part the nature of its facility. Because its functions under its contract with ICE do not meet the express definition set forth in § 2744.01(C)(2)(h), neither it nor any other specific function listed in § 2744.01(C)(2) is applicable.

Accordingly, I look to § 2744.01(C)(1), which provides that a governmental function is any of the following:

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety or welfare [and] that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons.

By contrast, a proprietary function is defined as "one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." O.R.C. § 2744.01(G)(1)(b).

██ There is no state mandate for county jails to be custodians of the federal

government's immigration detainees. Nor does state sovereignty confer any such obligation. Ohio has no interest in the detention of those the federal government may wish to deport. The contract between Seneca County Jail and ICE does not serve the common good of Ohio's citizens, but rather serves only the pecuniary interest of Seneca County. *See Brown v. Lincoln Hts.,* 2011 WL 2852782, *4 (Ohio App.Ct. July 20, 2011).

The contract is lucrative for the county. Pursuant to its contract with ICE, Seneca County received $58 per day, per detainee, housing an average of 100 ICE detainees per day, and billing ICE some $2 million for housing each year.

It may be argued that despite the profit motive, the housing of non-criminal ICE federal detainees is nonetheless a governmental function because it is an activity "not engaged in or not customarily engaged in by nongovernmental persons." § 2744.01(C)(1)(c). But Ohio's immunity cannot reach beyond Ohio's sovereignty. Though the practice by local authorities of generating supplemental income from the housing immigration detainees may be increasingly commonplace, it is a duty well beyond those mandated by the General Assembly.

Providing this service to the federal government cannot be considered "governmental" in the sense of activities that political subdivisions of Ohio historically have performed for the benefit of their citizens. Though housing immigration detainees is "governmental" *vis-a-vis* the federal government, it is nongovernmental *vis-a-vis* the state and its political subdividision. I conclude, accordingly, that renting jail space to the federal government in a profit-making venture is more properly considered a proprietary function than a governmental one for the purposes of § 2744 immunity.

As discussed above, § 2744.02(A)(1) grants a political subdivision general immunity from civil liability when an injury results from the performance of a governmental *or* proprietary function, so while I agree with Peart that the housing of federal immigration detainees is not a governmental function, defendants are nevertheless entitled to a grant of immunity unless one of the exceptions to this general grant applies.

### ii. Exceptions to Immunity

A political subdivision is liable in damages for injury allegedly caused by: 1) "negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment"; 2) "negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions"; 3) "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads"; 4) "negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility." O.R.C. 2744.02(B)(1)-(4). A political subdivision is also liable when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code. § 2744.02(B)(5).

Exceptions listed in § 2744.02(B)(1), (3), and (4) clearly do not apply. Sections 2744.02(B)(1) and (3) provide liability for claims not alleged here, and § 2744.02(B)(4) specifically excludes "jails, places of juvenile detention, workhouses, or any other detention facility."

But § 2744.02(B)(2) is directly applicable. As discussed above, when the county accepts payments for housing federal detainees it is performing a proprietary function. As such, the county is exposed to liability for claims of negligence, such as that alleged here.

Peart asserts that O.R.C. § 2744.02(B)(5) also bars immunity because O.R.C. (S) § 341.01 and § 311.05 expressly impose liability on the Sheriff with respect to the negligent operation of the jail.

Section 341.01 does not impose liability. It defines the duties of the sheriff, including to "have charge of the county jail and all persons confined therein [and to] keep such persons safely." O.R.C. § 341.01. Section 2744.02(B)(5) states that "[c]ivil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision [ . . . ] or because that section uses the term 'shall' in a provision pertaining to a political subdivision." As defendants point out, Ohio courts have specifically held that § 341.01 does not expressly impose liability on the Sheriff. *E.g., Justice v. Rose,* 102 Ohio App. 482, 484, 144 N.E.2d 303 (1957).

█ Section 311.05, however, expressly imposes liability on the sheriff for the negligence of his deputies "if he orders, has prior knowledge of, participates in, acts in reckless disregard or, or ratifies the neglect of duty or misconduct in office of the deputy." As discussed in greater detail above, Peart has put forth evidence showing that Sheriff Steyer knew that officers in the jail were not filling out classification forms and were otherwise engaging in *ad hoc* classifications without obtaining pertinent information.

Sheriff Steyer testified that he made no effort whatsoever to evaluate the suitability of the deputies' assessments or supervise their classifications. Sheriff Steyer also knew or should have known the dangers resulting from inadequate classification of detainees, as proper classification is necessary to safely house inmates.

Peart has shown a genuine issue of material fact as to whether the Sheriff can thus be liable under § 311.05. Therefore, § 2744.02(B)(5) applies to expose the Sheriff to liability despite the general grant of immunity to political subdivisions of § 2744.02(A).

### iii. Defenses

Immunity may nevertheless be reinstated if one of the defenses listed in § 2744.03 applies, but defendants have not argued any of these defenses, and none apply here. Defendants may not assert state law immunity against Peart's negligence claims.

### b. Individual Capacity

The Sheriff and Commissioners also assert immunity in their individual capacities under § 2744. Individually named public employees are immune from liability under § 2744 unless: 1) the employee acted outside the scope of his or her employment; 2) the employee acted with malice, bad faith, or in a wanton or reckless manner; or 3) liability is expressly imposed on the employee by statute. O.R.C. § 2744.03(A)(6).

█ There is no allegation that the County Commissioners had any connection with the incidents in the jail beyond their official capacity. They did not act outside the scope of their employment, with malice, bad faith, or in a wanton or reckless manner, and there is no statute expressly imposing liability on them. The Commissioners may therefore assert immunity in their individual capacities under § 2744.03.

Peart argues that Sheriff Steyer can be found individually liable because he engaged in both wanton misconduct and § 311.05 imposes liability.

 The issue of wanton misconduct is normally a jury question. *Fabrey v. McDonald Village Police Dep't,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). The standard for showing wanton misconduct is, however, high. *Id.* The Ohio Supreme Court has stated that "wanton misconduct [is] the failure to exercise any care whatsoever." *Id.* It requires a "disposition to perversity on the part of the tortfeasor [. . .] under such conditions that the actor must be conscious that his conduct will in all probability result in injury." *Id.* (quoting *Roszman v. Sammett,* 26 Ohio St.2d 94, 96–97, 269 N.E.2d 420 (1971)) (internal quotations omitted).

 A rational jury could find that failure to separate violent and nonviolent inmates may in all probability result in violence, and the failure to classify inmates appropriately is likely to result in housing assignments dangerous to inmates. Taking all evidence in the light most favorable to the plaintiff, there is a question of material fact whether the failure to classify inmates is mere negligence or wanton misconduct, and therefore summary judgment is inappropriate.

Moreover, as discussed above, O.R.C. § 311.05 expressly imposes liability on the Sheriff for the misconduct of his deputies "if he orders, has prior knowledge of, participates in, acts in reckless disregard or, or ratifies the neglect of duty or misconduct in office of the deputy."

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for summary judgment [Doc. 39] be, and the same hereby is overruled, except as to Peart's O.R.C. § 2921.44 claim and the defendant Commissioners' claim for state law individual immunity.

So ordered.